**SILVERMANACAMPORA LLP**
Proposed Attorneys for TexStyle, LLC
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300
Gerard R. Luckman
Adam L. Rosen

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
In re:                                                                    Chapter 11

  TEXSTYLE, LLC,
    d/b/a TexStyle Home Fashions,                         Case No. 11-11686 (SMB)


                                Debtor.
---------------------------------------------------------------x

**DECLARATION OF GUYER R. McCRACKEN UNDER LOCAL
RULE 1007- 2 IN CONNECTION WITH CHAPTER 11 FILING
<u>AND IN SUPPORT OF CERTAIN "FIRST DAY" MOTIONS</u>**

**Guyer R. McCracken** declares pursuant to 28 U.S.C. § 1746 as follows:

1. I am the Chief Operating Officer of TexStyle, LLC (the "Debtor"), the above-referenced debtor and debtor in possession. I worked for the Debtor from 2003 through 2008, and rejoined the Debtor in August 2010. I am familiar with the Debtor's business and its financial performance.

2. I submit this declaration under S.D.N.Y. Local Rule 1007-2 in connection with the filing of the Debtor's chapter 11 case, under title 11, United States Code (the "Bankruptcy Code") and in support of certain motions filed by the Debtor seeking emergency relief in order to avoid irreparable harm to the Debtor's estate (the "First Day Motions").

**<u>Nature of Debtor's Business and Assets</u>**

3. On the date hereof (the "Petition Date") the Debtor filed this chapter 11 case. This Declaration describes the Debtor's background, financial structure and business operations..

4. The Debtor is a Nevada limited liability corporation with offices located at 261 Fifth Avenue, Suite 901, New York, New York. The Debtor is a leading designer, manufacturer

and marketer of high quality, ready-made, home textiles and accessories to the U.S. and Canadian markets. The Debtor's products include window curtains, slip covers, pillows and juvenile bedding. The Debtor currently has 19 employees.

5. The Debtor currently utilizes an order processing system owned by Babine Lake Corporation ("Babine") for handling orders from Walmart.com for sale of bedding items. Babine is one of the former owners of the Debtor. The Walmart.com sales total approximately $100,000 per month and are an important component of the Debtor's business. The Debtor pays a use fee to Babine of $1,000 per month, plus related costs such as phone, internet, utility, computer server costs, and personnel support needed to maintain and support the orders and subsequent shipment of product to Walmart.com.

6. In September 2010, the Debtor was purchased by Bolan Textile (HK), Limited, a corporation owned by Wang Fang. Wang Fang is one of two managers of the Debtor. As part of the sale, Bolan Textile (HK), Limited made a $500,000 equity infusion in the Debtor and made a $1 million secured loan to the Debtor. In or about December 2010, Bolan Textile (HK), Limited made an additional $80,000 loan to the Debtor.

**The Wells Fargo Credit Facility**

7. The Debtor finances its operations through a Credit and Security Agreement, dated July 31, 2008, as amended (the" Credit Facility") with Wells Fargo Bank, NA acting through its Wells Fargo Business credit operating division. ("WFBC"). Under the Credit Facility, WFBC provides financing of up to $5.5 million, subject to certain limits based on the value of the Debtor's inventory and accounts receivable. The loan from WFBC is secured by a first-priority security interest in substantially all of the Debtor's assets. As of the Petition Date, the Debtor was indebted to WFBC under the Credit Facility in the amount of approximately $2.8 million.

8. On December 27, 2010, WFBC issued a notice of default under the Credit Facility which led to substantial discussions and negotiations between the Debtor and WFBC

regarding WFBC's forbearance from pursing certain default remedies under the Credit Facility and the Debtor's restructuring and possible chapter 11 filing. On April 8, 2011, the Debtor and WFBC entered into an amendment to the Credit Facility which, among other things, modified the borrowing base inventory sub-limit and the inventory advance rate under the Credit Facility. In addition, the amendment provided that Bolan USA LLC, would execute a guaranty of the Debtor's obligations under the Credit Facility and pledge $200,000 as security for the performance of its obligations under the guaranty. Wang Fang is one of the owners of Bolan USA LLC.

9. In connection with its discussions and negotiations with WFBC, the Debtor retained RAS Management Advisors, LLC ("RAS") as its financial advisors to assist the Debtor with the development of a 13-week forecast and related liquidity management. The Debtor continues to use RAS's services and intends to retain RAS as its financial advisor in this chapter 11 case.

10. The Debtor has provided WFBC with a 13-week financial forecast and based on that forecast WFBC has agreed to provide postpetition financing to the Debtor of up to $4.5 million (the "DIP Loan") upon terms to be set forth in a motion to be submitted to the Court on the Petition Date. The motion to approve the DIP Loan will seek an order authorizing the Debtor to continue to borrow money from WFB under substantially the same terms as contained in the Credit Facility.

**The Decline in the Debtor's Business**

11. Over the past two years the Debtor's profitability has suffered as a result of several factors. First, the global economic recession has adversely affected the amount of the Debtor's sales. Second, retailer consolidation in the United States has adversely affected the Debtor's sales. Third, the continued existence of significant payables at the time of the acquisition of the Debtor in September 2010 adversely affected the Debtor's borrowing capability

AROSEN/875592.3/060000

under its Credit Facility with WFBC, which impacted the Debtor's ability to buy sufficient goods to fill orders.

12. In 2009, the Debtor had sales of $26 million and losses of $2 million. In 2010, the Debtor had sales of $16 million and losses of over $4 million.

**The Debtor's Liabilities and Assets**

13. As of February 28, 2011, the Debtor had total assets of approximately $7.6 million and total liabilities of approximately $13.8 million.

14. WFBC holds a secured claim against the Debtor in the approximate amount of $2.6 million. The Debtor has unsecured debt of approximately $9 million.

15. In addition, the Debtor owes approximately $1.5 million in secured debt to certain insiders of the Debtor, including Bolan Textile (HK), Ltd.[1], Anderson TS Holdings, LLC and Babine. Andersen TS Holdings, LLC and Babine are the former owners of the Debtor and their secured claims arose in connection with their sale of the Debtor in September 2010. The Debtor intends to challenge the validity and/or the secured status of certain of these secured claims during this chapter 11 case.

**The First Day Motions**

16. On the Petition Date, the Debtor filed five "First Day" motions seeking emergency relief:

- Motion to Pay Certain Pre-Petition Date Wages and Related Employee Benefits
- Motion to Pay Certain Distribution Network Vendors
- Motion for Authority to Borrow Money from WFBC on a Postpetition Basis
- Motion to Continue Certain Customer Practices

---

[1] Prior to the Petition Date, Wang Fang, one of the Debtor's managers, guaranteed certain amounts owed by the Debtor to Suzhou Glacier Import & Export, a creditor of the Debtor, and agreed to pledge certain property in order to secure the guaranty to Suzhou Glacier Import & Export.

- Motion for Authority to Maintain Existing Bank Accounts and Cash Management Systems

17. I believe that obtaining the relief requested in each of the First Day motions is critical to avoid irreparable harm to the Debtor and its business. The motion seeking to pay certain pre-Petition Date wages and related benefits is critical because the Debtor's employees may stop working if they are not paid. The motion merely seeks to pay less than two weeks of wages and commissions in amounts which do not exceed the priority limits set forth in Bankruptcy Code section 507. The total amount of pre-Petition Date wages, commissions and expenses to be paid will not exceed the limitations set forth in Bankruptcy Code section 507(a)(4).

18. The motion seeking approval of the DIP Loan with WFBC is essential to the Debtor's continued operations. The DIP loan will provide postpetition financing of up to $4.5 million, subject to certain limitations. The DIP loan is critical to the Debtor's operations because, without the DIP loan, the Debtor would be unable to continue to pay its ongoing expenses. As stated above, the DIP Loan is being made on substantially the same terms as the Debtor's pre-Petition Date credit arrangement with WFBC.

19. The motion seeking authority in the Debtor's discretion to pay two network distribution vendors is critical because on the Petition Date, I estimate that the Debtor will have a significant amount of goods in the possession of two freight forwarders and logistic providers. Unless those parties are paid on a timely basis, the Debtor risks delay in the deliver of goods to its customers and the consequential loss of revenue. The motion seeks to pay up to $60,000 to two distribution network vendors.

20. The motion seeking authority to continue certain customer practices is important to the Debtor's success in chapter 11 because the Debtor must be able to continue to provide its

customers with advertising allowances, damage allowances, warranties, refunds, returns, and exchanges as it has done so in the ordinary course of its business.

**Information Required By Local Rule 1007-2**

21. It is my understanding that Local Rule 1007-2 requires the Debtor to disclose certain information relating to the Debtor's assets, liabilities and financial condition. That information is set forth in **Exhibit "A"** annexed hereto.

**Conclusion**

22. The Debtor believes that with the protection of this Court, it will be able to propose a plan which provides for the Debtor's reorganization or liquidation for the benefit of creditors.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 12, 2011

**TEXSTYLE, LLC**

By: s/ Guyer R. McCracken
    Guyer R. McCracken
    Chief Operating Officer

AROSEN/875592.3/060000