SilvermanAcampora LLP
Proposed Attorneys for TexStyle LLC
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300
Gerard R. Luckman
Adam L. Rosen
Edward M. Flint

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x

In re:

TEXSTYLE LLC,
d/b/a TEXSTYLE HOME FASHIONS

     Debtor.
---------------------------------------------------------x

Chapter 11
Case No. 11-11686 (SMB)

**EMERGENCY APPLICATION FOR ORDERS (1) AUTHORIZING THE DEBTOR
TO INCUR POST PETITION FINANCING, ON AN INTERIM BASIS, WITH
SUPERPRIORITY OVER ADMINISTRATIVE EXPENSES AND SECURED BY
SUPERPRIORITY LIENS PURSUANT TO SECTIONS 105(a), 361, 364(c) and 364(d)
OF THE BANKRUPTCY CODE, (2) AUTHORIZING THE USE OF CASH COLLATERAL
PURSUANT TO SECTION 363(c) OF THE BANKRUPTCY CODE, (3) SCHEDULING
A FINAL HEARING AND ESTABLISHING NOTICE REQUIREMENTS PURSUANT
TO FED. R. BANKR. P. 2002 AND 4001 AND GRANTING RELATED RELIEF**

TO: THE HONORABLE STUART M. BERNSTEIN
   UNITED STATES BANKRUPTCY JUDGE:

  TexStyle, LLC, the above debtor and debtor in possession (the "Debtor"), by this Application (the "Application") hereby seeks, among other things, the entry of an interim order authorizing and approving the terms and conditions of a proposed order authorizing the Debtor to use cash collateral and obtain debtor in possession financing and scheduling a final hearing thereon, and in support of the Application, and respectfully sets forth and represents as follows:

**SUMMARY OF RELIEF REQUESTED**

  1. By this Application, the Debtor requests orders pursuant to §§105, 361, 362, 363, and 364 of title 11, United States Code (the "Bankruptcy Code"), Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 4001-2 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"), (i) authorizing the

use of "cash collateral," as such term is defined Bankruptcy Code section 363, in which Wells Fargo Bank, NA acting through its Wells Fargo Business Credit operating division. ("WFBC", or the "Prepetition Lender") has an interest (the "Cash Collateral"), (ii) authorizing the Debtor to obtain Debtor in Possession financing ("DIP Financing") from WFBC pursuant to terms substantially similar to its prepetition agreement with the Debtor, (iii) providing adequate protection (as hereinafter defined) to the Prepetition Lender; (iv) vacating and modifying the automatic stay imposed by Bankruptcy Code section 362 to the extent necessary to implement and effectuate the terms and provisions of any such Order; and (v) scheduling, pursuant to Bankruptcy Rule 4001, a final hearing (the "Final Hearing") to be held before this Court to consider entry of a final order approving (a) the Debtor's obtaining DIP financing and use of cash collateral and (b) the grant of adequate protection to WFBC, all on a final basis (the "Final Order"). A proposed interim order (the "Interim Order") is annexed hereto as **Exhibit A**. In accordance with Bankruptcy Rule 4001, below is a summary of the terms of the proposed DIP financing and use of Cash Collateral:

    A.    <u>Cash Collateral and DIP Financing</u>

        (i)    <u>Parties with an Interest in the Cash Collateral</u>. The party with an interest in the Cash Collateral is WFBC[1].

        (ii)    <u>DIP Financing and Use of Cash Collateral</u>. The Debtor shall obtain DIP Financing and use Cash Collateral to fund the operation of its business and in accordance with the DIP budget (the "Initial Approved Budget") setting forth on a line-item basis the Debtor's anticipated cumulative cash receipts and expenditures on a weekly basis and all necessary and required cumulative expenses which the Debtor expects to incur during each week of the Initial Approved Budget. Interim Order at ¶s 2 and 3. A copy of the Initial Approved Budget is annexed hereto as **Exhibit B**.

        (iii)    <u>Events of Default</u>. The occurrence of any of the following events shall constitute an event of default:

            (a)    the Court enters an order authorizing the sale of all or substantially all assets of the Debtor that does not provide

---

[1] Certain of the Debtor's former and current insiders assert secured claims against the Debtor. These claims are subordinated to WFBC and will be challenged by the Debtor in this case.

2

for the payment in full to WFBC of its claims in cash upon the closing of the sale, unless otherwise agreed by WFBC in its sole and absolute discretion;

(b) the Court enters an order granting relief from the automatic stay to a third party with respect to material assets of the Debtor's estate;

(c) the Debtor ceases operations of its present business as such existed on the Petition Date or takes any material action for the purpose of effecting the foregoing without the prior written consent of WFBC, except to the extent contemplated by the Initial Approved Budget;

(d) the Debtor's bankruptcy case is either dismissed or converted to a Chapter 7 case, pursuant to an order of the Court, the effect of which has not been stayed;

(e) a Chapter 11 trustee, an examiner, or any other responsible person or officer of the Court with similar powers is appointed by order of the Court, the effect of which has not been stayed;

(f) a change in the Debtor's ownership or management occurs, in a manner that is not acceptable to WFBC, in its sole discretion;

(g) the Interim Order is reversed, vacated, stayed, amended, supplemented or otherwise modified in a manner which shall, in the sole opinion of WFBC, materially and adversely affect the rights of WFBC hereunder or shall materially and adversely affect the priority of any or all of WFBC's claims and/or the DIP Liens;

(h) the occurrence, subsequent to the Petition Date, of an Event of Default under the Credit Agreement, as modified under the Interim Order, including, but not limited to, WFBC's making of any over advances under the Credit Facility, as modified. Any Event of Default occurring and/or existing as of the Petition Date or solely because of the commencement of the Debtor's bankruptcy case on the Petition Date shall not constitute an Event of Default under the Interim Order;

(i) (1) the Debtor expends any funds or monies for any purpose other than those set forth on the Initial Approved Budget, or (2) the Debtor's net cash flow, which constitutes cash receipts less cash disbursements, is less than ninety percent (90%) of the net cash flow projections set forth in the Initial Approved Budget for the cumulative Initial

3

|     | Approved Budget periods which have occurred, tested weekly commencing the fourth (4th) week after entry of the Interim Order, or (3) the Debtor's net cash flow is more than $100,000 less than the net cash flow projections set forth in the Initial Approved Budget at any time during the three (3) weeks after entry of the Interim Order; |
| --- | --- |
| (j) | the occurrence of a material adverse change, including without limitation any such occurrence resulting from the entry of any order of the Court, in each case as determined by WFBC in its sole and absolute discretion in (1) the condition (financial or otherwise), operations, assets, business or business prospects of the Debtor, (2) the Debtor's ability to repay WFBC, and/or (3) the value of the Collateral; |
| (k) | any material and/or intentional misrepresentation by the Debtor in any financial reporting or certifications to be provided by the Debtor to WFBC; |
| (l) | non-compliance or default by the Debtor with any of the terms and provisions of the Interim Order; provided, however, that said non-compliance or default shall not be deemed an Event of Default if curable and cured by the Debtor within five (5) days after notice of such non-compliance or default is given to the Debtor by WFBC; |
| (m) | the failure by the Debtor, on or before April 22, 2011, to provide WFBC with a draft of a chapter 11 plan of reorganization (the "Plan") or a draft of a motion to sell substantially all of its assets pursuant to 11 U.S.C. § 363 (the "Sale Motion"), which Plan or Sale Motion shall be in a form acceptable to WFBC, in its sole discretion; |
| (n) | the failure by the Debtor, on or before April 29, 2011, to file the Plan or the Sale Motion with the Bankruptcy Court in a form acceptable to WFBC, in its sole discretion; |
| (o) | the failure by Bolan USA LLC to execute a limited guaranty, to establish the Bolan Pledge Account at WFBC or to execute the Bolan Pledge Agreement; and |
| (p) | the failure by the Debtor to remain current with respect to the line items in the Initial Approved Budget for "Payroll - Including Taxes" and "Royalties - Crayola and Others - Current." |

Interim Order at ¶15.

(iv) <u>Adequate Protection</u>. To secure the DIP Financing and as adequate protection for the use of Cash Collateral, WFBC shall receive (i) a valid, perfected and enforceable security interest (the "Adequate Protection Liens") equivalent to a lien granted under Bankruptcy Code section 364(d)(1)and upon substantially all of the assets of the Debtor in existence prior to the Petition Date and hereby created after the Petition Date, wherever the assets are located; (ii) an administrative claim under Bankruptcy Code sections 503(b)(1), 507(a), and 507(b), which shall have priority in this Case and in any case under chapter 7 of the Bankruptcy Code upon conversion of this Case or any other action, case or proceeding related to or arising out of any of the foregoing, under Bankruptcy Code sections 364(e), 364(c)(1), 503(b) and 507(b) and otherwise over all administrative expenses and unsecured claims against the Debtor and its estate, now existing or hereafter arising, of any kind or nature whatsoever which allowed claims shall be payable from and have recourse to all Collateral of the Debtor, subject to payment of the Carve Out (as defined below); and (iii) cash payments of interest at the non-default rate and at the times required under the Credit Facility. Interim Order at ¶s 2, 5 and 6.

(v) <u>Carve Out</u>. The pre-petition liens, Replacement Lien, the Superpriority Claim and the DIP Liens shall be subject to the following, with any amounts so paid or otherwise funded by WFBC being DIP Advances secured by the DIP Liens: (i) unpaid fees of the Clerk of the Bankruptcy Court and the statutory fees of the U.S. Trustee pursuant to 28 U.S.C. § 1930(a) and 31 U.S.C. § 3717; (ii) allowed professional fees and expenses of (x) the professionals retained by the Debtor pursuant to final orders of the Court (the "Debtor's Professionals"); and (y) the professionals retained by the Committee (if appointed) pursuant to final orders of the Court (the "Committee's Professionals"), and the reasonable expenses of the members of the Committee (other than the fees and expenses of professionals employed by members of the Committee), to the extent incurred prior to (a) delivery of a notice of an Event of Default (as defined in the Interim Order) or (b) the occurrence of the Maturity Date, whichever is earlier, and to the extent such fees and expenses are consistent with the Budget, subject to the limitations on the use of such funds set forth in this Interim Order, and, to the extent unpaid, limited to $100,000 (the "Chapter 11 Carve Out"). The pre-petition liens, Replacement Lien, the Superpriority Claim and the DIP Liens shall also be subject to the approved professional fees and expenses incurred by any Chapter 7 Trustee whose professionals' retention is approved by final orders of the Court (the "Chapter 7 Trustee's Professionals", and together with the Debtor's Professionals and the Committee's Professionals the "Professionals"), solely up to an aggregate amount of $15,000 (the "Chapter 7 Carve Out," and together with the Chapter 11 Carve Out, the "Carve Out"), with any amounts so paid or otherwise funded by WFBC being DIP

5

Advances secured by DIP Liens.. Interim Order at ¶ 11.

  (vi) <u>Maturity Date</u>. The Maturity Date of the DIP Financing is July 8, 2011. Interim Order at ¶ 7.

  (vii) <u>Determination of the Validity, Enforceability, Priority, and Amount of the Prepetition Obligations</u>. Subject to the right of a creditors' committee, if any, to challenge within sixty (60) days after entry of a Final Order, and the right of any other party to challenge within seventy-five (75) days after entry of the Interim Order, the amount and the validity of liens securing the Prepetition Obligations, the Interim Order contains acknowledgments by the Debtor as to the validity, enforceability, priority and amount of the Prepetition Secured Obligations. Interim Order at ¶s 23 and 24.

 B. <u>Postpetition Financing</u>. The salient terms of the DIP Financing are set forth at ¶ 21 hereof.

 C. <u>Extraordinary Provisions</u>

  (i) The following are terms of the proposed DIP Financing and use of Cash Collateral that are considered to be "Extraordinary Provisions" under Local Rule 4001-2.

   (a) <u>Termination Date.</u> In the absence of a further order of this Court, the Debtor shall no longer be authorized to use Cash Collateral or obtain advancing under the DIP Financing without the written consent of the Prepetition Lender after the earliest to occur of (i) the confirmation of a plan of reorganization for the Debtor; (ii) the sale of substantially all of the assets of the Debtor; (iii) the conversion of the Debtor's Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code; (iv) the appointment of a trustee under Chapter 11 of the Bankruptcy Code; (v) the appointment of an examiner with expanded powers under the Bankruptcy Code; (vi) the Debtor's ceasing and discontinuing its ordinary business operations; (vii) July 8, 2011 (unless otherwise extended by the Prepetition Lender); or (viii) upon the date that WFBC delivers a notice to the Debtor of an Event of Default. <u>See</u> Default provisions and section 1(iii) above, Interim Order at ¶s 7 and 30.

   (b) <u>Waivers and concessions as to the validity of prepetition debt</u>. The Debtor has agreed not to contest the validity or amount of the debt owed to the Lender or the validity and priority of the liens securing the Lender's claim. The Committee, if appointed, and all non-Debtor parties in interest (including any trustee appointed or elected in the

6

case prior to the Challenge Deadline) shall have time in accordance with Local Rule 4001-2(f) to investigate the validity, perfection, and enforceability of the Prepetition Liens, Prepetition Secured Obligations or to assert any other claims or causes of action against the Prepetition Lender. Interim Order at ¶ 23.

(c) <u>Roll up</u>. Under the DIP Facility (as defined below), no advances may be made to the Debtor unless and until the Debtor uses the proceeds of the first advance to make payment in full of the principal, accrued interest, fees and expenses owed on the Prepetition Obligations. Interim Order at ¶s 3 and 8.

(d) <u>Borrowing Base Reserve</u>. A Borrowing Base Reserve is created against the Debtor's Borrowing Base (as defined in Section 1.2(a)(ii)(b) of the Credit Agreement). The "Borrowing Base Reserve" shall mean, as of any date of determination, an amount or a percent of a specified category or item that WFBC establishes in its reasonable discretion from time to time to reduce availability under the Borrowing Base (a) to reflect events, conditions, contingencies or risks which affect the assets, business or prospects of Debtor, or the Collateral or its value, or the enforceability, perfection or priority of WFBC's security interests and liens in the Collateral, or (b) to reflect WFBC's judgment that any collateral report or financial information relating to Debtor and furnished to WFBC may be incomplete, inaccurate or misleading in any material respect. The Borrowing Base Reserve shall also include the Carve Out.

**BACKGROUND**

2. The Debtor is a Nevada limited liability corporation with offices located at 261 Fifth Avenue, Suite 901, New York, New York. The Debtor is a leading designer, manufacturer and marketer of high quality, ready-made, home textiles and accessories to the U.S. and Canadian markets. The Debtor's products include window curtains, slip covers, pillows and juvenile bedding. The Debtor currently has 19 employees.

3. The Debtor finances its operations through a Credit and Security Agreement, dated July 31, 2008, (as amended, the "Credit Facility") with WFBC. Under the Credit Facility, as modified in connection with WFBC's agreement to provide DIP Financing (sometimes

referred to as the "DIP Facility"), WFBC will provide financing of up to $4.5 million, subject to certain limits based on the value of the Debtor's inventory and accounts receivable. The loan from WFBC is secured by a first-priority security interest in substantially all of the Debtor's assets. As of the Petition Date, the Debtor was indebted to WFBC under the Credit Facility in the principal amount of approximately $2.8 million, plus accrued interest, fees and costs.

4. In December 2010, WFBC issued a notice of default under the Credit Facility which led to substantial discussions and negotiations between the Debtor and WFBC regarding WFBC's forbearance from pursing certain default remedies under the Credit Facility and the Debtor's restructuring and possible chapter 11 filing.

5. At about that time, in connection with its discussions and negotiations with WFBC, the Debtor retained RAS Management Advisors, LLC ("RAS") as its financial advisors to assist the Debtor with the development of a 13-week forecast and related liquidity management. The Debtor continues to use RAS's services and intends to retain RAS as its financial advisor in this chapter 11 case.

6. The Debtor has provided WFBC with a 13-week financial forecast and based on that forecast, WFBC has agreed to the Debtor's use of cash collateral and to provide postpetition financing to the Debtor upon terms set forth herein.

7. The Debtor has sought protection under chapter 11 to remedy its illiquidity immediately through emergency debtor-in-possession financing provided pursuant to Bankruptcy Code section 364, in order to enable it to preserve the value of its assets as a going concern. The Debtor expects to move quickly to put forth a plan of reorganization. In the interim, the Debtor's operations require sufficient levels of working capital to fund and support ordinary business expenditures, including payroll, expenses for production, processing and shipment of orders, taxes and other necessary overhead costs.

8. Absent access to emergency financing, Debtor will not have sufficient liquidity to continue production and order fulfillment operations, resulting in immediate and irreparable

harm to the Debtor's creditors, its estate, and its employees. Implementation of the post-petition financing arrangements summarized herein at the onset of this case is critical to avoid immediate and irreparable harm to the estate, and to support Debtor's effort to maximize the estate for the benefit of all creditors and parties-in-interest.

9. At this time, WFBC has indicated a willingness to advance funding required to meet the cash requirements of the Debtor's restructuring process and provide the Debtor with a period of time with which to either market the Debtor's business for equity investment or propose a plan to restructure the Debtor's business.

10. The Debtor believes that if it is permitted to restructure its operations and finances, the reorganized entity will be able to exit bankruptcy a healthier and stronger company that can compete in this industry.

11. At this time given the magnitude of its obligations and various immediate pressures on maintaining adequate cash flow to operate and restructure, the Debtor is compelled to pursue its financial and operational restructuring within the protections offered by chapter 11 of the Bankruptcy Code.

12. Accordingly, by this Application, Debtor seeks entry of the Interim Order and final the Final Order (collectively, the "Borrowing Orders");

 a) pursuant to Bankruptcy Code sections 364(c)(1), (2), (3) and (d) and §§503(b) and 507 and Bankruptcy Rule 4001(c), authorizing, on an interim basis, the Debtor to obtain post-petition financing in the form of a $4,500,000 Revolving Loan pursuant to the terms of the DIP Facility, among the Debtor and WFBC, and granting to WFBC superpriority administrative expense claim status pursuant to Bankruptcy Code sections 364(d)(1), 503(b) and 507 and a superpriority lien on and security interest in substantially all of the assets of the Debtor, all in accordance with the terms and conditions of the DIP Facility;

 b) approving the terms and conditions of the DIP Facility and authorizing the Debtor to execute and deliver, from time to time, all such documents, instruments and agreements and perform such other acts as may be required, necessary or desirable in connection with the DIP Facility including, without limitation, the payment of all fees, interest and charges required under the DIP Facility;

9

c) granting, pending the Final Hearing, authorization of borrowing under the DIP Facility of $3,339,000 (the "Interim Amount"), pursuant to the Interim Order in the form annexed hereto and made a part hereof as **Exhibit "A"**;

d) authorizing the Debtor, after entry of a Final Order, to borrow up to an aggregate of $4,500,000 in connection with the production of goods and fulfillment of order to its customers;

e) authorizing use of cash collateral of WFBC on an interim basis pursuant to Bankruptcy Code section 363(c)(2)(b) and granting WFBC adequate protection for the use of cash collateral, through replacement liens on post-petition assets and a superpriority administrative expense claim;

f) modifying the automatic stay provisions of Bankruptcy Code section 362 to the extent necessary to permit the WFBC to implement the terms and provisions of the DIP Facility and the provisions of the Borrowing Orders;

g) scheduling and approving the form and manner of notice of the Final Hearing to consider entry of the Final Order granting the relief sought herein on a permanent basis; and

h) granting the Debtor such further relief as is just and proper.

13. The Terms of the DIP Facility are set forth herein. Debtor requests that the Court enter the Interim Order and schedule a hearing on entry of the Final Order for late April 2011.

## JURISDICTION

14. The Court has jurisdiction over this Application under 28 U.S.C. § 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of these proceedings is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## PROPOSED DEBTOR-IN-POSSESSION FINANCING

15. Debtor's reorganization efforts hinge on access to adequate post-petition financing to maintain purchaser and order fulfillment operations so that the Debtor can remain a going concern. While the Debtor also seeks the use of WFBC's cash collateral, the Debtor is concerned that without DIP financing available, there may be temporary periodic cash shortfalls during the chapter 11 case. It is axiomatic that a business, such as the Debtor's, requires

AROSEN/893044.1/060000

sufficient liquidity to satisfy its ongoing cash requirements, to purchase inventory for new sales, pay employees, pay utilities and to fund myriad other ordinary course day-to-day expenditures. During the initial weeks of this case, Debtor's current assets (cash, inventory, accounts receivable) will not be sufficiently liquid to satisfy such obligations in the ordinary course of business, absent access to post-petition financing.

16. In addition, the Debtor's suppliers, vendors and other creditors are looking to the immediate approval of the DIP Facility for assurance that they will be paid on a continuous and timely basis. The Debtor's employees see the DIP Facility as necessary to ensure timely payment of payroll and other employee-related obligations. The ongoing cooperation of suppliers, vendors and employees is critical if the Debtor is to continue to operate in an orderly and reasonable manner which seeks to preserve and enhance the value of its assets for the benefit of all parties-in-interest.

17. Without immediate access to credit pursuant to the proposed DIP Facility and to the cash collateral, there would be a precipitous termination of the Debtor's business that would destroy the going-concern value of the Debtor's assets, resulting in immediate and irreparable harm to the Debtor's estate. Quite simply, the importance of the Debtor's immediate need for post-petition financing and use of cash collateral cannot be overstated.

18. Debtor has determined, in the exercise of its considered business judgment in consultation with its retained professionals, that it requires immediate use of borrowing under the DIP Facility up to $3.339 million on an interim basis and final authorization of the full DIP Facility thereafter. Such authorization will enable Debtor to meet its immediate credit obligations and provide it with sufficient liquidity to continue operations until it can negotiate and confirm a plan of reorganization.

(B) Overview of Proposed DIP Facility

19. Due to the exigencies and the nature of Debtor's business, Debtor determined that it was in its best interest to obtain post-petition financing from WFBC, which was the

11

AROSEN/893044.1/060000

Debtor's secured creditor pre-petition. Based on a review of comparable recent debtor-in-possession financing arrangements, Debtor believes that the terms and conditions of the DIP Facility are reasonable under the circumstances. The Debtor further believes that the DIP Facility offered by WFBC is the best deal presently available to it. First, the Debtor will not have to pay all of the usual due diligence, origination and commitment fees associated with such financing.[2] Second, the Debtor can avoid costly and protracted litigation over priming WFBC that would likely occur if it used another lender. Indeed, Debtor projects that the DIP Facility will improve its liquidity and help stabilize its operations until the reorganization process may be completed, a result which the Debtor believes would not be possible except through the DIP Facility. Debtor is certain that it would not be able to obtain unsecured credit allowable under Bankruptcy Code section 503(b) (1) as an administrative expense, or secured solely by liens and security interests junior to those of pre-petition lenders on better terms than that which is proposed herein.

20. WFBC has agreed to provide Debtor with an immediate use of $3.339 million of the DIP Facility, pending a final hearing. As could be expected in the Debtor's financial posture, WFBC requires that the DIP Facility be (a) entitled to superpriority administrative expense status pursuant to Bankruptcy Code section 364(c) and otherwise over all administrative expenses of the kinds specified in Bankruptcy Code sections 105(a), 326, 328, 330, 331, 503(b), 506(c), 507, 546(c), 726 and 1114 and (b) secured by superpriority status pursuant to Section 364(d)(1) over senior liens on and security interests in substantially all of the Debtor's assets subject only to the Carve Out. WFBC has agreed, however, to allow the Debtor a Carve Out described in detail above toward the payment of professional fees incurred by the estate.

21. A brief summary of certain of the key provisions of the DIP Facility follows; the Court and parties-in-interest, however, are respectfully referred to the proposed DIP Order for a

---

[2] WFBC is charging the Debtor a DIP Facility fee of $25,000. The Debtor believes such fee is reasonable under these circumstances.

12

full recitation of the terms and conditions of the DIP Facility.

| | |
|---|---|
| Borrower: | TexStyle, LLC |
| Lender: | WFBC |
| Commitment Availability: | Loan of $4.5 million for the following limited uses as set forth in the budget in connection with the purchase of goods and the fulfillment of orders to its customers: (i) payroll and related costs; (ii) payment of expenses in connection with the production, processing of orders and shipment of orders; (iii) payment of post-petition utilities; (iv) payment of Chapter 11 reorganization expenses as provided in the Initial Approved Budget; and (v) necessary office expenses and other expenses of administering this case, all in accordance with an approved budget. |
| Priority and Liens: | All borrowings under the DIP Facility shall be:<br>(i) entitled to superpriority administrative expense claim status pursuant to Bankruptcy Code section 364(c)(1), (2) and (3), superior to any and all administrative expense of the Debtor, except for the Carve Out; and (ii) secured pursuant to Bankruptcy Code section 346(d)(1) by superpriority lien over senior security interests in and liens upon all now owned or hereafter acquired assets and property of the estates, real and personal, of the Debtor, as set forth more fully in the Borrowing Order (the "Collateral"). |
| Term: | Provided that no other event of default has occurred, the terms of the DIP Facility shall end on the date that is the earliest to occur of (i) the confirmation of a plan of reorganization for the Debtor; (ii) the sale of substantially all of the assets of the Debtor; (iii) the conversion of the Debtor's Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code; (iv) the appointment of a trustee under Chapter 11 of the Bankruptcy Code; (v) the appointment of an examiner with expanded powers under the Bankruptcy Code; (vi) the Debtor's ceasing and discontinuing its ordinary business operations; or (vii) July 8, 2011. |
| Conditions Precedent: | The availability of the DIP Facility is conditioned upon satisfaction of usual and customary conditions precedent including, among other things, the following:<br><br>(i) Entry of the Interim Order and the Final Order, each in form and substance satisfactory to WFBC in its sole discretion, which Borrowing Orders shall contain provisions granting WFBC a superpriority lien pursuant to Bankruptcy Code sections 364(c)(1), (2) and (3), 503(b), 507 and 364(d)(1) on the Collateral and provide that its claim has the priority set forth under Bankruptcy Code sections 364(c)(1), (2) and (3), 503(b) and 507(b) over all |

13

administrative expenses incurred in these Chapter 11 cases, subject to the Carve Out; and

(ii) Posting of $200,000 in additional Collateral by Bolan USA, LLC, an affiliate of the Debtor's principal, in the form of a pledged deposit account at Wells Fargo Bank, N.A.

| | |
|---|---|
| Fees and Expenses: | A $25,000 DIP Facility fee shall be paid by the Debtor in connection with the DIP Facility. Debtor shall also be responsible for WFBC's attorneys' and financial advisor's reasonable fees and costs. |
| Interest Rate: | Daily three month LIBOR + 5.75%. |
| Advanced Rate: | Eligible Accounts 85%<br>Inventory-Lesser of 52% or 85% of net orderly liquidation value. |
| Inventory Sublimit: | $2.0 million |
| Cash Collateral Advance rate: | 100% |
| Modification of Automatic Stay and Notice Periods: | The DIP Facility provides for a modification of the automatic stay and notice Periods to allow the Lender to exercise certain remedies upon five (5) days to notice the Debtor, its counsel, counsel for any official committee and the U.S. Trustee, in the event of a default under the Borrowing. |

22. The Debtor believes that the terms of the DIP Facility are reasonable and fair under the circumstances and, therefore, obtaining the DIP Facility serves the best interests of the Debtor, its creditors and its estate.

**BASIS FOR APPROVAL OF THE DIP FACILITY
AND THE GRANTING OF LIENS AND SUPERPRIORITY
<u>ADMINISTRATIVE CLAIMS IN CONNECTION THEREWITH</u>**

23. Bankruptcy Code section 364 authorizes this Court to allow Debtor to obtain post-petition financing from WFBC in the manner proposed by WFBC in the DIP Facility. As described above, as security for all borrowings under the DIP Facility, Debtor proposes to grant WFBC a superpriority administrative claim and a superpriority lien on and security interest in all or substantially all of the Debtor's assets, subject only to the Carve Out. Such relief is authorized pursuant to Bankruptcy Code sections 364(c)(1)(2) and (3), 364(d)(1), 503(b) and 507.

24. The granting of superpriority administrative credit is allowable under Bankruptcy Code section 364(c) which provides:

> If the trustee is unable to obtain unsecured credit allowable under Section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring debt –
>
> (1) with priority over any and all administrative expenses of the kind specified in Sections 503(b) and 507(b) of this title;
> (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or
> (3) secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c).

25. The granting of superpriority lien status is governed by Bankruptcy Code section 364(d)(1) which provides:

> (d)(1) The Court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien if –
>
> (A) the trustee is unable to obtain such credit otherwise; and
>
> (B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted

11 U.S.C. § 364(d)(1).

26. Since the term "adequate protection" is not defined in the Bankruptcy Code, courts have held that the precise contours of the concept must be determined on a case-by-case basis. *See, e.g., In re O'Connor,* 808 F.2d 1393, 1396 (10th Cir. 1987). The focus of the requirement is to protect a secured creditor from diminution in the value of its interest in collateral during the reorganization process. *See, e.g., In re Beker Indus. Corp.,* 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986).

**REQUEST FOR IMMEDIATE BORROWINGS AND USE OF CASH**
**COLLATERAL ARE NECESSARY TO AVOID IRREPARABLE HARM**

27. Pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2), a minimum of 15 days' notice is required before a final hearing on this Application may commence. However, such Rule

15

provides that the Court may conduct a hearing before such 15 day period expires, and may authorize the obtaining of credit and the use of only that amount of cash collateral necessary to avoid immediate and irreparable harm to the estate pending a final hearing. Federal R. Bankr.P.4001 (c)(2).

28. As stated above, it is essential to the continued operation of its business that Debtor be authorized by this Court to obtain interim financing and use of cash collateral on an interim basis as set forth herein pending the final hearing on the Application. Because the Debtor's prepetition facility is a revolving line of credit, the Debtor had virtually no cash on the Petition Date, due to pre-petition lender's receipt of Debtor's accounts receivable daily through blocked account arrangements. Funds are urgently needed to meet all of the Debtor's working capital needs, and to preserve the going concern value of the Debtor. In the absence of immediate post-petition financing and the use of cash collateral, the Debtor's attempts to maximize its value for creditors would be immediately and irreparably jeopardized.

29. The Debtor believes that the terms and conditions of the DIP Facility represent the most favorable option for post-petition financing and for all of the foregoing reasons, are in the best interest of the Debtor, its estates and its creditors. Accordingly, the Debtor respectfully requests that, pending a final hearing on the Application, the terms and provisions of the DIP Facility be implemented and approved on an emergency interim basis, to the extent of authorizing Debtor to obtain interim post-petition financing under the DIP Facility in an aggregate amount not to exceed $3.339 million, on the terms and subject to the conditions set forth in the DIP Facility.

30. The Debtor further submits that the terms and conditions of the DIP Facility are fair and reasonable and are the result of arms' length negotiations between Debtor and WFBC. WFBC has even waived many of the customary fees and expenses that one would otherwise expect to be elements of a DIP transaction. Accordingly, WFBC should be accorded the benefits of Bankruptcy Code section 364(e) of the Bankruptcy Code in respect of the DIP

AROSEN/893044.1/060000

Facility.

31. As is apparent from the foregoing, the interim relief requested in this Application, pending the Final Hearing, is necessary, appropriate and fully warranted, and is essential to avoid immediate and irreparable harm to the Debtor, its estate and its creditors.

## NOTICE WITH RESPECT TO THE INTERIM ORDER

32. Debtor will provide notice by electronic transmission or overnight mail of this Application pursuant to Bankruptcy Rule 4001 to (a) the Office of the United States Trustee, (b) attorneys for WFBC, (c) the Debtor's twenty largest creditors and counsel to any Committee that is appointed, (d) the Debtor's remaining secured creditors, and (e) and all parties who have requested notice in this case. The Debtor respectfully submits that such notice is sufficient and requests that this Court find that no further notice of the relief requested herein is required.

## NOTICE WITH RESPECT TO THE FINAL ORDER

33. The Debtor also proposes to serve a copy of the Interim Order, this Application (together with exhibits)and Notice of the Final Hearing on entry of the Final Order by electronic transmission or overnight mail, within two (2) days after entry of the Interim Order, upon (a) the Office of the United States Trustee, (b) Riker Danzig Scherer Hyland & Perretti, LLP, attorneys for WFBC, (c) the Debtor's twenty largest creditors and any Committee appointed in the Debtor's case, (d) the Debtor's remaining secured creditors, and, by first class mail, on (x) the District Director for the Internal Revenue Service, and (y) all parties that have filed notices of appearances and requests for notices in the Debtor's chapter 11 case. The Debtor will serve Notice of the Interim Order by first class mail on all of Debtor's creditors. Debtor respectfully submits that such notice is sufficient, and requests that this Court find that no further notice of the Interim Order, the Final Hearing, the Final Order and all proceedings to be held in connection therewith is required.

34. No previous application for the relief sought herein has been made to this or any other Court.

17

**WHEREFORE,** Debtor respectfully requests that the Court: (a) enter the Interim Order (1) authorizing Debtor to use cash collateral on an interim basis and to obtain financing pursuant to the DIP Facility on an interim basis through the conclusion of the Final Hearing on the terms set forth herein and the DIP Facility and to use cash collateral on the interim basis, and (2) setting a date for the Final Hearing; (b) enter the Final Order authorizing the Debtor to use cash collateral and to obtain financing under the DIP Facility on the terms set forth herein and in the DIP Facility; and (c) grant the Debtor such further relief as is just and proper.

Dated: Jericho, New York  
    April 12, 2011

TEXSTYLE LLC  
Debtor and Debtor-in-Possession

By its Proposed Attorneys  
SilvermanAcampora LLP

By:  s/ Adam L. Rosen  
    Gerard R. Luckman  
    Adam L. Rosen  
    Edward M. Flint  
A Member of the Firm  
100 Jericho Quadrangle, Suite 300  
Jericho, New York 11753  
(516) 479-6300

AROSEN/893044.1/060000