UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

In re:                                                Chapter 11
                                                      Case No. 11-11686 (SMB)
  TEXSTYLE, LLC,
    d/b/a TexStyle Home Fashions,

                    Debtor.
----------------------------------------------------------------x

**FINAL ORDER (I) AUTHORIZING DEBTOR TO OBTAIN POSTPETITION FINANCING, GRANT SECURITY INTERESTS AND ACCORD PRIORITY STATUS PURSUANT TO 11 U.S.C. §§ 361, 364(c) AND 364(d), (II) AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363(c), (III) GRANTING ADEQUATE PROTECTION, AND (IV) MODIFYING AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)**

**WHEREAS,** on April 12, 2011 (the "Petition Date"), TexStyle, LLC (the "Debtor") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"); and

**WHEREAS,** the Debtor hereby stipulates and agrees as follows:

A.      In or about July 2008, Wells Fargo Bank, National Association, acting through its Wells Fargo Business Credit operating division ("WFBC"), made a loan to the Debtor, which was memorialized by, among other things, a Credit and Security Agreement dated July 31, 2008, a First Amendment to Credit and Security Agreement dated February 26, 2010, a Second Amendment to Credit and Security Agreement dated September 28, 2010 and a Third Amendment dated April 8, 2011 (as amended, modified and/or supplemented to date, collectively, the "Credit Agreement").  Pursuant to the Credit Agreement, WFBC made loans, advances and other financial accommodations to or for the benefit of the Debtor, which loans were secured by liens and/or security interests on substantially all of the Debtor's assets. WFBC also issued credit cards to the Debtor, which obligations were also secured by liens and or security interests in substantially all of the Debtor's assets; and

B.      Prior to the Petition Date, the Debtor defaulted under the Credit Agreement; and

C.     As of the Petition Date, the Debtor owed WFBC the approximate principal amount of $2.8 million, plus accrued and unpaid interest, fees and costs, plus an additional sum of approximately $15,000 on account of the credit card obligations (the "Prepetition Obligations"); and

**WHEREAS,** on April 12, 2011, the Debtor filed a motion with the Court (the "Motion")[1] for authority pursuant to 11 U.S.C. §§ 363, 364(c) and 364(d), to use cash collateral, to ratify, reaffirm and adopt, as modified and supplemented by this Order, the Credit Agreement, and thereby obtain post-petition secured loans, advances and/or financial accommodations from WFBC (the "DIP Advances"); and

**WHEREAS**, on April 13, 2011, the Court conducted an interim hearing with respect to the Motion; and

**WHEREAS**, on April 14, 2011, the Court entered an Interim Order (i) Authorizing Debtor to Obtain Postpetition Financing, Grant Security Interests and Accord Priority Status Pursuant to 11 U.S.C. §§ 361, 364(c) and 364(d), (ii) Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. § 363(c), (iii) Granting Adequate Protection, (iv) Giving Notice of Final Hearing Pursuant to Fed. R. Bankr. P. 4001(b)(2) and (c)(2), and (v) Modifying Automatic Stay Pursuant to 11 U.S.C. § 362(d) (the "Interim Order"); and

**WHEREAS,** the Court held a final hearing with respect to the Motion on May 12, 2011 (the "Final Hearing"); and the Court, having considered the Motion and the proceedings before the Court at the Final Hearing; and all objections, if any, to the final relief requested in the Motion having been withdrawn, resolved or overruled by the Court, as reflected on the record of the Final Hearing;

---

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

060000/915294.1/BSS

**THE COURT HEREBY FINDS AND DETERMINES THAT:**

A.      The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of the Debtor's chapter 11 case and the Motion in this district are proper under 28 U.S.C. §§ 1408 and 1409;

B.      The statutory predicates for the relief sought in the Motion are 11 U.S.C. §§ 105, 361, 362, 363 and 364 and Fed. R. Bankr. P. 4001 and 9014;

C.      It is in the best interest of the Debtor's estate that it be allowed to obtain the DIP Advances from WFBC, and to use WFBC's cash collateral, under the terms and conditions set forth in the Credit Agreement, as modified herein, as such is necessary to permit the orderly administration of the Debtor's estate;

D.      The DIP Advances are being extended by WFBC in good faith and WFBC is entitled to the protection of 11 U.S.C. § 364(e);

E.      Notice of relief sought by the Motion and the hearings with respect thereto, believed by the Debtor to be the best available notice under the circumstances, has been given pursuant to Fed. R. Bankr. P. 4001(b) and (c); and

F.      Good and sufficient cause exists for the issuance of this Order to prevent immediate and irreparable harm to the Debtor's estate;

G.      WFBC is willing to make the DIP Advances (the "DIP Facility") and consent to the Debtor's use of WFBC's collateral and cash collateral (as such term is defined in 11 U.S.C. § 363(a)), only upon the conditions contained in this Final Order;

H.      The Debtor is unable to obtain sufficient levels of unsecured credit allowable under 11 U.S.C. § 503(b)(1) as an administrative expense necessary to maintain and conduct its business;

I.      The Debtor is unable to obtain secured credit allowable only under 11 U.S.C. § 364(c)(1) and (c)(2), except under the terms and conditions provided in this Final Order; and

060000/915294.1/BSS

J.     The Debtor reasonably believes that the use of the DIP Advances pursuant to this Final Order is adequate to fund all projected legitimate and allowable expenses of its Chapter 11 case during the period covered by the budget annexed as an exhibit to the Motion (the "Budget").

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1.     **Motion Granted.**  The Motion is hereby granted on a final basis to the extent set forth herein.  All objections to the Motion are hereby overruled.  The Debtor is hereby authorized and deemed to ratify and adopt the Credit Agreement, as modified herein, subject to the rights of any statutory creditors' committee ("Committee") and third parties to challenge same to the extent set forth below.

2.     **Cash Collateral.**  The Debtor is hereby authorized to use WFBC's cash collateral in accordance with and solely for the purposes set forth in the Budget, subject to the terms of the Credit Agreement, as modified herein.  As adequate protection for the Debtor's use of WFBC's cash collateral, WFBC shall be granted the following:

(a)     WFBC is hereby granted an allowed superpriority administrative claim under and to the extent provided in 11 U.S.C. § 507(b) against the Debtor's estate which shall have priority in payment over any other indebtedness and/or obligations now in existence or incurred hereafter by the Debtor and over all administrative expenses or charges against property arising in the Debtor's Chapter 11 case or any superseding Chapter 7 case, including without limitation those specified in  11 U.S.C. §§ 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), 726, 1113 or 1114 (the "Superpriority Claim").

(b)     The Debtor is hereby authorized to and hereby deemed to grant to WFBC a valid, binding and enforceable lien, mortgage and/or security interest (a "Lien", and as so granted to WFBC, the "Replacement Lien") in all of the Debtor's presently owned or hereafter acquired property and assets, whether such property and assets were acquired before or after the Petition Date, of any kind or nature, whether real or personal, tangible or intangible,

060000/915294.1/BSS

wherever located, and the proceeds and products thereof (collectively, the "Collateral"); provided however, that Collateral shall not include avoidance actions under chapter 5 of the Bankruptcy Code or the proceeds thereof. Notwithstanding the foregoing, the Replacement Lien shall be subject to Liens existing as of the Petition Date that are valid, enforceable, not subject to subordination to WFBC's pre-petition liens pursuant to a pre-petition subordination agreement and not subject to avoidance by a trustee under the Bankruptcy Code and any Replacement Liens granted by order of the Court with respect to such Liens (collectively, "Senior Third Party Liens"). Further, the Replacement Liens and Superpriority Claims shall be subject to and have the same enforceability and affect as the enforceability under the Bankruptcy Code of WFBC's prepetition liens on the Cash Collateral. WFBC shall not be subject to the equitable doctrines of "marshaling" or any similar claim or doctrine with respect to any Collateral.

3. **Authorization to Obtain DIP Financing.** The Debtor is hereby authorized to (i) obtain extensions of credit pursuant to the Credit Agreement, as modified herein, in accordance with and solely for the purposes set forth in the Budget, in WFBC's discretion, and subject to the terms set forth in this Final Order; (ii) incur any and all liabilities and obligations under the Credit Agreement, as modified herein, and to pay the fees of WFBC and all interest, fees and expenses and other obligations provided for under the Credit Agreement and this Final Order; (iii) satisfy the Prepetition Obligations owed to WFBC from the proceeds of the DIP Advances; (iv) satisfy all conditions precedent and perform all obligations hereunder and thereunder in accordance with the terms hereof and thereof; and (v) WFBC is authorized to make the DIP Advances to the Debtor in accordance with the Credit Agreement, as modified herein. All obligations owed by the Debtor to WFBC shall be due and payable, and shall be paid, by the Debtor in accordance with the requirements of this Final Order and the Credit Agreement.

060000/915294.1/BSS

4.    **DIP Loan Documentation.**  The Credit Agreement, as modified herein, shall constitute valid, binding and enforceable obligations of the Debtor in accordance with its terms to the extent of any financing permitted by this Final Order.  In furtherance of this Final Order, the Debtor is authorized to do and perform all acts, to make, execute and deliver all agreements, instruments and documents (including, without limitation, the execution of promissory notes, security agreements, pledge agreements, mortgages, deeds of trust, deeds to secure debt, financing statements and intellectual property filings), and to pay all filing and recording fees and privilege taxes, in each case as may be necessary or, in the opinion of WFBC, desirable to give effect to any of the terms and conditions of the Credit Agreement, to perfect the DIP Liens (as defined below) and to assure priority thereto or as otherwise required or contemplated by the Credit Agreement.  To the extent necessary, each officer of the Debtor and such other individuals as may be so authorized by the Debtor, are hereby authorized to execute and deliver each document necessary with respect to the DIP Advances, such execution and delivery to be conclusive of their respective authority to act in the names, and on behalf, of the Debtor.

5.    **DIP Liens.**  To secure the obligations for the DIP Advances, WFBC is hereby granted: (i) pursuant to 11 U.S.C. § 364(c)(1), a superpriority administrative expense claim having priority over any and all administrative expenses (and *pari passu* with the super-priority claims granted in respect of use of cash collateral by this Final Order), whether heretofore or hereafter incurred, of the kind specified in 11 U.S.C. §§ 503(b) or 507(b); (ii) pursuant to 11 U.S.C. § 364(c)(2), a perfected first-priority lien on all Collateral, to the extent that such Collateral is not subject to valid, perfected and non-avoidable liens as of the Petition Date; (iii) pursuant to 11 U.S.C. § 364(c)(3), a perfected lien on all the Collateral, subject only to valid, perfected and non-avoidable liens in favor of third parties in existence as of the Petition Date or to valid liens in existence as of the Petition Date that are perfected subsequent to such commencement as permitted by 11 U.S.C. § 546(b); and (iv) pursuant to 11 U.S.C. § 364(d) of

060000/915294.1/BSS

the Bankruptcy Code, a perfected first priority, priming and senior security interest and lien granted to WFBC in and on all the Collateral (clauses (i)-(iv) above, collectively the "DIP Liens"). To the extent the proceeds of the DIP Advances have not yet fully repaid the principal and accrued interest, fees and expenses owed on the Prepetition Obligations (the "Roll-up"), the first advance hereunder shall be used to fully repay the Prepetition Obligations. Notwithstanding the foregoing, and only to the extent that the value of WFBC's Collateral is determined by the Court to be less than the amount of the Prepetition Obligations, that portion of the Roll-up that represents the amount of the Prepetition Obligations that exceed the value of the Collateral shall be unwound and reversed. The Committee shall have sixty (60) days from the entry of the Final Order to file the appropriate pleading seeking a determination that the value of the Collateral is less than the amount of the Prepetition Obligations.

6.      **Automatic Perfection of Liens.** The DIP Liens shall be deemed valid, binding, enforceable and perfected upon entry of this Final Order. WFBC may, but shall not be required to, file any UCC-I financing statements, mortgages, deeds of trust, security deeds, notices of lien or any similar document or take any other action (including possession of any of the Collateral) in order to validate the perfection of any of the DIP Liens. If WFBC, in its sole discretion, chooses to file any such mortgages, deeds of trust, security deeds or UCC-I financing statements, or take any other action to validate the perfection of any part of the DIP Liens, the Debtor and its officers are authorized and directed to execute and deliver any documents or instruments as WFBC shall reasonably request, and all such documents and instruments shall be deemed to have been filed or recorded at the time and on the date of entry of this Final Order. WFBC, in its discretion, may file a certified copy of this Final Order in any filing office in each jurisdiction in which the Debtor is organized or has or maintains any Collateral, and each filing office is directed to accept such certified copy of this Final Order for filing and recording.

060000/915294.1/BSS

7.     **Repayment; Other Terms**.  The DIP Facility shall mature on July 8, 2011 (the "Maturity Date") and shall be due and payable in full on the Maturity Date, to extent not previously paid, without offset or counterclaim.  In no event shall the Debtor or any obligor be authorized to offset or recoup any amounts owed, or alleged to be owed to WFBC, unless and to the extent expressly otherwise agreed to in writing by WFBC.

8.     **Use of Proceeds of DIP Facility.**  The DIP Facility will be used for (i) the refinancing in full of all of the Debtor's obligations, whether for borrowed money, fees, expenses, or otherwise, under or with respect to the Prepetition Obligations, as finally allowed by the Court, under which refinancing all rights and benefits regarding the Prepetition Obligations are transferred to the DIP Facility, including without limitation the right to turnover; (ii) for the purposes set forth in and permitted by the Credit Agreement, as amended by this Final Order, including working capital and general corporate purposes of the Debtor, and (iii) from and after entry of this Final Order, the discharge of any outstanding portion of the indebtedness represented by the Prepetition Obligations by repaying the Prepetition Obligations from DIP Advances.

9.     **Modifications to Terms of Credit Agreement.**  The following modifications shall be incorporated into, and deemed amendments of, the Credit Agreement:

(a)     The Maximum Line Amount set forth at Section 1.1(a)(i) of the Credit Agreement shall be reduced to $4,500,000.

(b)     The Borrowing Base inventory sub-limit set forth at Section 1.2(a)(ii)(b) of the Credit Agreement shall be limited to the amounts set forth in the Budget, plus ten percent (10%), not to exceed $2,000,000.

(c)     The inventory advance rate referenced in Section 1.2(a)(ii)(a) of the Credit Agreement shall be modified such that it is the lesser of 52% or 85% of the Net Orderly Liquidation Value.

060000/915294.1/BSS

(d)     The Borrowing Base set forth at Section 1.2(a) of the Credit Agreement shall be reduced by the establishing of the Borrowing Base Reserve, which Borrowing Base Reserve shall reduce the Borrowing Base on a dollar by dollar basis.  The "Borrowing Base Reserve" shall mean, as of any date of determination, an amount or a percent of a specified category or item that WFBC establishes in its reasonable discretion from time to time to reduce availability under the Borrowing Base (a) to reflect events, conditions, contingencies or risks which affect the assets, business or prospects of Debtor, or the Collateral or its value, or the enforceability, perfection or priority of WFBC's security interests and liens in the Collateral, or (b) to reflect WFBC's judgment that any collateral report or financial information relating to Debtor and furnished to WFBC may be incomplete, inaccurate or misleading in any material respect.  The Borrowing Base Reserve shall also include the Carve Out Reserve (defined below).

(e)     The "Carve Out Reserve" shall be a reserve established for payment of the Chapter 11 Carve Out (defined below).  The Carve Out Reserve shall be equal to $0.00 during the first three (3) weeks of the Budget, shall be $10,000 as of the first (1st) day of fourth (4th) week of the Budget, and shall thereafter increase by $10,000 on the first (1st) day of each subsequent week of the Budget, up to the total amount of the Chapter 11 Carve Out.

10.     **Pledged Deposit Account.**  Prior to WFBC providing any DIP Advances pursuant to this Final Order, Bolan USA LLC, a company controlled by the Debtor's principal, Karen Wang, and which is an affiliate of the Debtor's sole member, shall deposit the sum of $200,000 with WFBC, shall execute a limited guaranty in favor of WFBC and shall pledge the $200,000 as security for the guaranty (the "Bolan Pledge Account") and as additional collateral to WFBC within the borrowing base set forth in the Credit Agreement pursuant to a Pledge Agreement (the "Bolan Pledge Agreement").  The Credit Agreement shall be further modified such that the Borrowing Base set forth at Section 1.2(a) of the Credit Agreement shall be increased by one hundred percent (100%) of the funds in the Bolan Pledge Account, limited to $200,000.

060000/915294.1/BSS

11.    **Carve Out.**    The pre-petition liens, Replacement Lien, the Superpriority Claim and the DIP Liens shall be subject to the following, with any amounts so paid or otherwise funded by WFBC being DIP Advances secured by the DIP Liens: (i) unpaid fees of the Clerk of the Bankruptcy Court and the statutory fees of the U.S. Trustee pursuant to 28 U.S.C. § 1930(a) and 31 U.S.C. § 3717; (ii) allowed professional fees and expenses of (x) the professionals retained by the Debtor pursuant to final orders of the Court (the "Debtor's Professionals"); and (y) the professionals retained by the Committee (if appointed) pursuant to final orders of the Court (the "Committee's Professionals"), and the reasonable expenses of the members of the Committee (other than the fees and expenses of professionals employed by individual members of the Committee), to the extent incurred prior to (a) delivery of a notice of an Event of Default (as defined herein) or (b) the occurrence of the Maturity Date, whichever is earlier, and to the extent such fees and expenses are consistent with the Budget, subject to the limitations on the use of such funds set forth in this Final Order, and, to the extent unpaid, limited to $100,000 (the "Chapter 11 Carve Out").  The pre-petition liens, Replacement Lien, the Superpriority Claim and the DIP Liens shall also be subject to the approved professional fees and expenses incurred by any Chapter 7 Trustee whose professionals' retention is approved by final orders of the Court (the "Chapter 7 Trustee's Professionals", and together with the Debtor's Professionals and the Committee's Professionals the "Professionals"), solely up to an aggregate amount of $15,000 (the "Chapter 7 Carve Out," and together with the Chapter 11 Carve Out, the "Carve Out"), with any amounts so paid or otherwise funded by WFBC being DIP Advances secured by DIP Liens.

12.    **Waiver of Claims to Collateral.**    Effective, *nunc pro tunc* to the date of the Interim Order:

(a)    the Debtor waives irrevocably all claims and rights, if any, it might otherwise assert against the Collateral pursuant to 11 U.S.C. §§ 506(c) or 552(b).

(b)    except from and pursuant to the terms of the Carve Out, no entity in the course of the Debtor's bankruptcy case (whether Chapter 11 or subsequent Chapter 7), shall be permitted

060000/915294.1/BSS

to recover from the Collateral (whether directly or through grant of derivative and/or equitable standing in the name of the Debtor and/or the Debtor's estate) any cost or expense of preservation or disposition of the Collateral, including, without limitation, expenses and charges as provided in 11 U.S.C. §§ 506(c) or 552(b) without the prior written consent of WFBC; and

(c)      except from and pursuant to the terms of the Carve Out, no entity shall be permitted to recover from the Collateral, or assert against WFBC, any claim with respect to any unpaid administrative expense of the Debtor's bankruptcy case, whether or not the Debtor's payment of such administrative claim was contemplated by or included in the Budget.

13.    **Limitations on Further Indebtedness.**  So long as there are any obligations outstanding to WFBC, unless WFBC shall have given its prior written consent, or the Court enters an order, upon proper notice to WFBC and after a hearing, requiring that all of the Debtor's obligations to WFBC be immediately satisfied in full, there shall not at any time be entered in the Debtor's Chapter 11 case any further orders which authorize: (a) under 11 U.S.C. § 363, the use of cash collateral in which WFBC has an interest, or the sale, use, or lease, other than in the ordinary course of business, of property of the Debtor in which WFBC has an interest; or (b) the obtaining of credit or the incurring of indebtedness pursuant to 11 U.S.C. §§ 364(c) or 364(d), or any other grant of rights against the Debtor and/or its estate, secured by a Lien in the Collateral or entitled to priority administrative status which is equal or superior to that granted to the Superpriority Claim.

14.    **Fees and Costs.**  In addition to the fees, costs, charges and expenses authorized under the Credit Agreement, the Debtor shall pay in accordance with the procedures set forth herein as allowed obligations secured by the DIP Liens, all of WFBC's reasonable attorneys' and other professionals' fees and reimbursable expenses arising from or related to the Interim Order and the Final Order, including without limitation (a) the negotiating, closing, documenting and obtaining of Court approval thereof, (b) all proceedings in connection with any Disposition (as such term is defined below), (c) all proceedings in connection with the

060000/915294.1/BSS

interpretation, amendment, modification, enforcement, enforceability, validity or implementation of the Interim Order or the Final Order, (d) defending any Challenge (as such term is defined below) and/or responding to any Fed. R. Bankr. 2004 discovery or other investigation brought with respect to any prospective Challenge, (e) all other matters and proceedings arising in or related to the Debtor's bankruptcy case, and (f) all reasonable expenses, costs and charges in any way or respect arising in connection with the foregoing (collectively, the "WFBC Expenses"). Payment of the WFBC Expenses so charged shall be deemed final unless the Debtor and/or the Committee notifies WFBC in writing, within thirty (30) days after the date of receipt of a statement of account, that such party disputes the reasonableness of any WFBC Expenses set forth thereon, in which case the disputed amounts shall be determined by the Court or otherwise resolved by the parties.  In addition to the foregoing, the Debtor shall be authorized and directed to immediately pay a fee of $25,000 to WFBC in consideration of WFBC's making of the DIP Advances.

15.     **Events of Default.**  Each of the following shall constitute an "Event of Default" for purposes of this Final Order:

(a)     the Court enters an order authorizing the sale of all or substantially all assets of the Debtor that does not provide for the payment in full to WFBC of its claims in cash upon the closing of the sale, unless otherwise agreed by WFBC in its sole and absolute discretion;

(b)     the Court enters an order granting relief from the automatic stay to a third party with respect to material assets of the Debtor's estate;

(c)     the Debtor ceases operations of its present business as such existed on the Petition Date or takes any material action for the purpose of effecting the foregoing without the prior written consent of WFBC, except to the extent contemplated by the Budget;

(d)     the Debtor's bankruptcy case is either dismissed or converted to a Chapter 7 cases, pursuant to an order of the Court, the effect of which has not been stayed;

060000/915294.1/BSS

(e)     a Chapter 11 trustee, an examiner, or any other responsible person or officer of the Court with similar powers is appointed by order of the Court, the effect of which has not been stayed;

(f)     a change in the Debtor's ownership or management occurs, in a manner that is not acceptable to WFBC, in its sole discretion;

(g)     this Final Order is reversed, vacated, stayed, amended, supplemented or otherwise modified in a manner which shall, in the sole opinion of WFBC, materially and adversely affect the rights of WFBC hereunder or shall materially and adversely affect the priority of any or all of WFBC's claims and/or the DIP Liens;

(h)     the occurrence, subsequent to the Petition Date, of an Event of Default under the Credit Agreement, as modified herein, including, but not limited to, WFBC's making of any overadvances under the Credit Agreement, as modified herein.  Any Event of Default occurring and/or existing as of the Petition Date or solely because of the commencement of the Debtor's bankruptcy case on the Petition Date shall not constitute an Event of Default under this Final Order;

(i)     (1) the Debtor expends any funds or monies for any purpose other than those set forth on the Budget, (2) the Debtor's net cash flow, which constitutes cash receipts less cash disbursements, is less than ninety percent (90%) of the net cash flow projections set forth in the Budget for the cumulative Budget periods which have occurred, tested weekly commencing the fourth (4th) week after the entry of the Interim Order, or (3) the Debtor's net cash flow is more than $100,000 less the net cash flow projections set forth in the Budget at any time during the first three (3) weeks after entry of the Interim Order;

(j)     the occurrence of a material adverse change, including without limitation any such occurrence resulting from the entry of any order of the Court, in each case as determined by WFBC in its sole and absolute discretion in (1) the condition (financial or otherwise),

060000/915294.1/BSS

operations, assets, business or business prospects of the Debtor, (2) the Debtor's ability to repay WFBC, and/or (3) the value of the Collateral;

(k)     any material and/or intentional misrepresentation by the Debtor in any financial reporting or certifications to be provided by the Debtor to WFBC;

(l)     non-compliance or default by the Debtor with any of the terms and provisions of this Final Order; provided, however, that said non-compliance or default shall not be deemed an Event of Default if curable and cured by the Debtor within five (5) days after notice of such non-compliance or default is given to the Debtor by WFBC;

(m)     the failure by the Debtor, on or before May 9, 2011, to provide WFBC with a draft of a chapter 11 plan of reorganization (the "Plan") or a draft of a motion to sell substantially all of its assets pursuant to 11 U.S.C. § 363 (the "Sale Motion"), which Plan or Sale Motion shall be in a form acceptable to WFBC, in its sole discretion;

(n)     the failure by the Debtor, on or before May 13, 2011, to file the Plan or the Sale Motion with the Bankruptcy Court in a form acceptable to WFBC, in its sole discretion;

(o)     the failure by Bolan USA LLC to execute a limited guaranty, to establish the Bolan Pledge Account at WFBC or to execute the Bolan Pledge Agreement; and

(p)     the failure by the Debtor to remain current with respect to the line items in the Budget for "Payroll - Including Taxes" and "Royalties - Crayola and Others - Current."

16.     **Remedies Upon Occurrence of Event of Default.**  Upon the occurrence of an Event of Default and the provision of five (5) day's written notice thereof by WFBC to the Debtor's, the Committee's and the U.S. Trustee's respective counsel (which notice may be given facsimile or e-mail transmission, the automatic stay being deemed lifted for such purpose) (the "Default Notice"), or upon the occurrence of the Expiration Date:

(a)     WFBC shall have the right, free of the restrictions of 11 U.S.C. § 362 or under any other section of Bankruptcy Code or applicable law or rule, to take immediate reasonable action to protect the Collateral from harm, theft and/or dissipation;

060000/915294.1/BSS

(b)      WFBC shall have no obligation to make any further DIP Advances;

(c)      with respect to an Event of Default as to which a Default Notice has been given, the Debtor, the Committee and/or the U.S. Trustee shall have five (5) days from the receipt of the Default Notice (the "Remedy Notice Period") to obtain an order of the Court on notice to WFBC enjoining or restraining WFBC from exercising rights and remedies based upon the Event of Default specified in the Default Notice ("Restraint on Remedies"), provided that a Restraint on Remedies may be sought solely on grounds of the non-occurrence or timely cure of the Event of Default specified in the Default Notice;

(d)      (i) with respect to an Event of Default as to which a Default Notice has been given, immediately upon expiration of the Remedy Notice Period, unless a Restraint on Remedies has timely been obtained from the Court, or (ii) immediately upon the occurrence of the Expiration Date the payment of any and all Obligations of the Debtor to WFBC shall be due and payable, the Debtor's use of the Collateral (including without limitation inventory and/or cash collateral) pursuant to this Order and the Budget shall cease, WFBC shall have the right, free of the restrictions of 11 U.S.C. § 362 or under any other section of Bankruptcy Code, to exercise contractual, legal and equitable rights and remedies as to all or such part of the Collateral as WFBC shall elect, and WFBC shall have the right, free of the restrictions of 11 U.S.C. § 362 or any other section of Bankruptcy Code, to impose an "administrative freeze" with respect to, and thereafter set off, the Debtor's cash on deposit at or within its control; and

(e)      the Carve Out Reserve shall immediately increase to the full amount unpaid or the amount otherwise subject to potentially being funded with respect to Chapter 11 Carve Out, which amount shall be calculated by WFBC in its sole discretion, plus by any past due royalty payments that the Debtor owes to third-party licensors.

17.      **Insurance and Other Debtor Obligations.**  The Debtor, at its expense, shall (a) continue to keep the Collateral fully insured as set forth in the Credit Agreement, and (b) pay any and all undisputed pre-petition and post-petition taxes, assessments and governmental

charges with respect to the Collateral, in both cases as provided under the Credit Agreement. The Debtor shall provide WFBC with proof of the foregoing within three (3) business days of written demand and will give WFBC reasonable access to its records in this regard.

18.     **Required Reporting**.  The Debtor shall provide WFBC with such written reports as are required under the Credit Agreement.   In addition, the Debtor shall provide WFBC (i) daily borrowing base or collateral reports; (ii) daily updates of inventory collateral; (iii) monthly updates of ineligible inventory; (iv) bi-weekly updates of ineligible accounts receivable; (v) a rolling thirteen (13) week cash flow forecast by no later than Tuesday of every other week in a form similar to the Budget and (vi) a weekly report no later than Tuesday of each week showing the Debtor's actual cash receipts and disbursements for the prior week and the variances between such actual amounts and the amounts set forth in the Budget for such Budget period. All written reports provided by the Debtor to WFBC shall be certified by an officer of the Debtor acceptable to WFBC to be accurate to the best of such officer's knowledge, information and belief.

19.     **WFBC's Inspection Rights.**  WFBC shall have the right, at any time during the Debtor's normal business hours, to inspect, audit, examine, check, make copies of or extracts from the books, accounts, checks, orders, invoices, bills of lading, correspondence and other records of the Debtor, and to inspect, audit and monitor all or any part of the Collateral, including but not limited to the right to test count the Debtor's inventory, and the Debtor shall make all of same available to WFBC and its representatives, for such purposes.  WFBC and its representatives may, without WFBC being deemed to be in control of, or a fiduciary for, the Debtor, and without obtaining prior consent from the Debtor, (1) discuss the Debtor's books and records, the Collateral, the Budget and/or the Debtor's business operations with the Debtor's directors, officers, retained professionals (including without limitation attorneys, accountants, investment bankers and financial, restructuring and/or workout advisors and consultants) or employees, and (2) make observations and recommendations regarding the Debtor's books and

060000/915294.1/BSS

records, the Collateral, the Budget and/or the Debtor's business operations, to the Debtor's directors, officers, retained professionals (including without limitation attorneys, accountants, investment bankers and financial, restructuring and/or workout advisors and consultants) or employees.

20. **Disposition of Proceeds.** For purposes of this Final Order, (a) "Proceeds" shall mean any and all payments, proceeds or other consideration realized upon the sale, liquidation, realization, collection or other manner of disposition of the Collateral, whether in the ordinary course of the Debtor's business (including without limitation accounts and other proceeds arising from the Debtor's sales of inventory and/or performance of services) or other than in the ordinary course of the Debtor's business, (b) "Disposition" shall mean any sale, liquidation, realization, collection or other manner of disposition of Collateral other than in the ordinary course of the Debtor's business, including without limitation any sale authorized pursuant to 11 U.S.C. § 363 and/or any plan of reorganization, and (c) "Payoff Letter" shall mean a letter provided by WFBC to the Debtor at, or within ten (10) days after, closing of any Disposition setting forth the total amount of principal, accrued and unpaid interest, fees, including attorneys' fees, and expenses due and payable under the DIP Facility as of the closing of such Disposition (the "Payoff Amount").

21. In the case of any Disposition, WFBC shall provide the Debtor with a good faith estimate of the Payoff Amount (the "Estimated Payoff Amount") at the closing of a Disposition. The Debtor and any successors to the Debtor, including without limitation any successor trustee or trustees, shall assign and deliver any and all such Proceeds which come into their possession to WFBC, up to and including the amount of the Estimated Payoff Amount, in the form received upon the closing of a Disposition. Within ten (10) business days after the closing of a Disposition, WFBC shall serve upon the Debtor a Payoff Letter. To the extent the Payoff Amount set forth in the Payoff Letter is more than the Estimated Payoff Amount, the Debtor, including without limitation any successor trustee or trustees, shall assign and deliver any and

060000/915294.1/BSS

all such additional Proceeds up to the Payoff Amount to WFBC within two (2) business days of receipt of the Payoff Letter. To the extent the Payoff Amount set forth in the Payoff Letter is less than the Estimated Payoff Amount, WFBC shall return any excess Proceeds to the Debtor within two (2) business days of sending the Payoff Letter. No further order of the Court shall adversely affect the rights of WFBC to receive the Proceeds of any Disposition in accordance with the provisions of this paragraph or as otherwise agreed to by WFBC. In furtherance of the foregoing, neither the Debtor nor the Committee shall seek to cause the escrow of, enjoin WFBC's receipt of, or otherwise withhold from WFBC any Proceeds, up to the full Payoff Amount, of any Disposition. The foregoing is without prejudice to the rights of (a) WFBC and/or the Committee to object to any proposed Disposition and/or (b) any third party with respect to the allocated Proceeds of any Disposition of Collateral encumbered by a Senior Third Party Lien. WFBC is hereby authorized pursuant to 11 U.S.C. § 363(k) to credit-bid all or any portion of the Obligations at any Disposition.

22. WFBC is authorized, notwithstanding the provisions of 11 U.S.C. § 362, to retain and apply all Proceeds up to the Payoff Amount obtained or received pursuant to the preceding paragraph of this Order to the repayment obligations under the DIP Facility. *Nunc pro tunc* to the date of the Interim Order, such applications of Proceeds shall be free and clear of any claim, charge, assessment or other liability including, without limitation, any such claim or charge arising out of or based on, directly or indirectly, 11 U.S.C. §§ 506(c) or 552(b).

23. **Debtor's Admissions.** Without prejudice to the rights of third parties to the extent set forth in the following paragraph of this Final Order, (a) the validity, extent, priority, perfection, enforceability and non-avoidability of WFBC's pre-petition claims against the Debtor and/or pre-petition Liens shall not be subject to challenge by the Debtor, (b) the Debtor shall not seek to avoid or challenge (whether pursuant to Chapter 5 of Bankruptcy Code or otherwise) any transfer made by or on behalf of the Debtor to or for the benefit of WFBC prior to the Petition Date, and (c) the Debtor hereby releases and waives all defenses, affirmative defenses,

060000/915294.1/BSS

counterclaims, claims, causes of action, recoupments, setoffs or other rights that it may have to contest (1) any Events of Default (as defined in this Final Order) which were or could have been declared by WFBC as of the Petition Date, (2) any provisions of the Credit Agreement; (3) the amount of the Pre-Petition Obligations and/or the value of the Collateral on the Petition Date, or (4) the conduct of WFBC and its directors, officers, employees, agents, attorneys and other professionals (collectively, the "WFBC Parties") in administering the business relationship among the Debtor and WFBC, including, without limitation, "equitable subordination", "lender liability" and/or "deepening insolvency" claims and causes of action.

24. **Challenge Period.** Notwithstanding the Debtor's release and waiver set forth in the preceding paragraph of this Final Order, the Committee shall have 60 days (or such longer period as the Committee may obtain for cause shown before the expiration of such period) from the date of this Final Order to commence an adversary proceeding against any of the WFBC Parties for the purpose (collectively, a "Challenge") of (1) challenging the validity, extent, priority, perfection, enforceability and non-avoidability of WFBC's pre-petition claims and/or Liens against the Debtor, (2) seeking to avoid or challenge (whether pursuant to Chapter 5 of the Bankruptcy Code or otherwise) any transfer made by or on behalf of the Debtor to or for the benefit of WFBC prior to the Petition Date, and/or (3) seeking damages or equitable relief against WFBC arising from or related to the pre-petition business relationship between the Debtor and WFBC, including, without limitation, "equitable subordination", "lender liability" and/or "deepening insolvency" claims and causes of action. The Committee is granted standing to commence such a proceeding. Any other party in interest shall have 75 days (or a longer period for cause shown before the expiration of such period) from the date of entry of the Interim Order to move this Court for an order granting it standing to commence a Challenge. All parties in interest, including without limitation the Committee, that fail to act in accordance with the time periods set forth in the preceding sentences of this paragraph shall be, and hereby are, barred forever from commencing a Challenge. The foregoing is without prejudice to any and all of the

060000/915294.1/BSS

WFBC Parties' legal and equitable claims, counterclaims, defenses and/or rights of offset and setoff in response to any such Challenge, all of which are reserved, and the foregoing shall in no event revive, renew or reinstate any applicable statute of limitations which may have expired prior to the date of initiation of such Challenge. Despite the commencement of a Challenge, WFBC's pre-petition claims and Liens shall be deemed valid, binding, properly perfected, enforceable, non-avoidable, not subject to disallowance under 11 U.S.C. § 502(d) and not subject to subordination under 11 U.S.C. § 510 until such time as a final and non-appealable judgment order and judgment entered sustaining such Challenge in favor of the plaintiffs therein. WFBC shall have no Carve Out obligations with respect to DIP Advances to any person or entity (including without limitation the Committee) or to any Professionals with respect to any potential or commenced Challenge.

25. This Final Order shall be binding upon and inure to the benefit of WFBC, the Debtor and their respective successors and assigns, including, without limitation, any trustee, responsible officer, examiner, estate administrator or representative, or similar person appointed in a case for the Debtor under any chapter of Bankruptcy Code. Except as set forth herein with respect to a Challenge, no rights are created under this Final Order for the benefit of any creditor of the Debtor, any other party in interest in the Debtor's bankruptcy case, or any other persons or entities, or any direct, indirect or incidental beneficiaries thereof.

26. The terms and conditions of this Final Order shall be: (a) immediately enforceable pursuant to Fed. R. Bankr. P. 8005; and (b) not be stayed absent (1) an application by a party in interest for such stay in conformance with such Fed. R. Bankr. P. 8005, and (2) a hearing upon notice to the Debtor and WFBC.

27. The provisions of this Final Order and any actions taken pursuant to the Interim Order or the Final Order shall survive entry of any orders which may be entered confirming any plan of reorganization or which may be entered converting this bankruptcy case from Chapter 11 to Chapter 7 of Bankruptcy Code. The terms and provisions of this Final Order, as well as

060000/915294.1/BSS

the claims and DIP Liens granted by this Final Order, shall continue in these or any superseding case under Bankruptcy Code and shall continue notwithstanding any dismissal of the Debtor's bankruptcy case, and such claims and DIP Liens shall maintain their priority as provided by this Order until the Obligations are satisfied in full. No Proceeds or cash collateral may be used by any party in interest seeking to modify any of the rights granted to WFBC under this Final Order without WFBC's prior written consent.

28.     To the extent that any of the provisions of this Final Order shall conflict with any of the provisions of the Credit Agreement or the Interim Order, this Final Order is deemed to control and shall supersede the conflicting provision(s). To the extent that any of the provisions of this Final Order shall conflict with any order of the Court authorizing the Debtor to continue the use of pre-petition bank accounts, cash management systems and/or business forms, or any similar orders, then this Final Order is deemed to control and supersede the conflicting provision(s) in said orders.

29.     WFBC and the Debtor may amend, modify or supplement any of the provisions of the Credit Agreement (collectively, a "Modification") without further order of the Court, provided that (a) such Modification is not material, and (b) notice of such Modification is filed with the Court and given to the Committee's and the U.S. Trustee's counsel reasonably prior to the proposed effective date thereof, except that filing with the Court shall not be required with respect to any Modification that in addition to being non-material is also technical and/or ministerial. The foregoing provisions shall not apply to any forbearance or waiver by WFBC with respect to any Events of Default which may have occurred (and the foregoing provisions shall not limit or impair WFBC's absolute discretion to agree to such forbearance or waiver), provided that such forbearance or waiver is not itself conditioned upon the Debtor's agreeing to any Modification that is material.

30.     The Debtor's authorization to obtain DIP Advances, and the Debtor's authorized use of Collateral (including without limitation cash collateral) pursuant to this Final Order, shall

060000/915294.1/BSS

be in effect for the period commencing with the Petition Date through and including the earlier to occur of July 8, 2011 or the effective date of any plan of reorganization of the Debtor (the "Expiration Date").

Dated: New York, New York
　　　 May 12, 2011

　　　　　　　　　　　　　　　　 **/s/  STUART M. BERNSTEIN**
　　　　　　　　　　　　　　　　 HONORABLE STUART M. BERNSTEIN
　　　　　　　　　　　　　　　　 UNITED STATES BANKRUPTCY JUDGE

060000/915294.1/BSS