UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

In re:                                                    Chapter 11

   TEXSTYLE, LLC,
     d/b/a TexStyle Home Fashions,                    Case No. 11-11686 (SMB)

                     Debtor.
-------------------------------------------------------------x

# AMENDED PLAN OF REORGANIZATION
## FOR TEXSTYLE, LLC
## <u>UNDER CHAPTER 11 OF THE BANKRUPTCY CODE</u>

**SILVERMANACAMPORA LLP**
Attorneys for TexStyle, LLC
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300
Gerard R. Luckman
Adam L. Rosen
Brett S. Silverman

Dated: July 14, 2011

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

In re:                                                    Chapter 11

   TEXSTYLE, LLC,
     d/b/a TexStyle Home Fashions,               Case No. 11-11686 (SMB)


                   Debtor.
------------------------------------------------------------x

**AMENDED PLAN OF REORGANIZATION FOR TEXSTYLE, LLC
UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

      This Amended Plan of Reorganization is proposed and filed by the above-caption debtor TexStyle, LLC, pursuant to chapter 11 of the Bankruptcy Code.[1] The Plan provides for the reorganization and restructuring of the Debtor and the payment of Allowed Claims consistent with the distribution scheme set forth in the Bankruptcy Code and the objection to Disputed Claims. In addition, the Plan establishes a Post-Consummation Trust for the benefit of certain Unsecured Creditors of the Debtor.

# ARTICLE I

## DEFINITIONS

      For purposes of the Plan, the following terms shall have the meanings set forth below. Terms used in this Plan which are defined in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning set forth in the Bankruptcy Code or the Bankruptcy Rules unless defined in this Plan. The meaning of the defined terms shall be equally applicable to the singular and plural forms of the terms defined, unless a different meaning is clearly required by and explained in the text.

      1.01 "Administrative Expense" shall mean any cost or expense of administration of the Chapter 11 Case entitled to priority in accordance with the provisions of Bankruptcy Code sections 503(b) and 507(a)(1), including, without limitation: (i) Fee Claims; (ii) claims relating to goods received by the Debtor within twenty (20) days before the Commencement Date in the ordinary course of the Debtor's business; and (iii) any actual, necessary costs and expenses of preserving the Debtor's Estate and of operating the Debtor's business (but only to the extent they are due or payable on or before the Effective Date).

      1.02 "Affiliate" shall have the meaning set forth in Bankruptcy Code section 101(2).

      1.03 "Affiliate Claim" shall mean any Claim of an Affiliate of the Debtor.

      1.04 "Allowed" shall mean a Claim, other than an Administrative Expense or Interest in the Debtor, which is: (i) listed in the Debtor's Schedules filed in the Chapter 11 Case as of the Effective Date, and not listed in the Schedules as disputed, contingent, unliquidated or unknown and as to which no objection to the allowance thereof is filed; (ii) set forth in a proof of Claim timely and properly filed in the Chapter 11 Case on or before the date fixed by the Bankruptcy Court (or by applicable rule or statute) as the last day for filing such proof of Claim, or late filed

---

[1] All capitalized terms used but not defined in the text of this Plan shall have the meanings set forth in Article I of the Plan.

with leave of the Bankruptcy Court after notice and opportunity for hearing given to counsel to the Debtor and the Committee, and as to which no objection to the allowance thereof is filed; or (iii) determined to be allowed by a Final Order of the Bankruptcy Court.  To the extent permitted under Bankruptcy Code section 506(b), an Allowed Claim shall include unpaid interest on the Claim and any reasonable unpaid fees, costs or charges provided for under the agreements under which such Claim arose. Any Claim which has been or is hereafter listed in the Schedules as contingent, unliquidated or disputed, and for which no Proof of Claim is or has been timely Filed, is not considered an Allowed Claim and shall be expunged without further action by the Debtor, the Post-Confirmation Debtor or the Distribution Agent.

1.05    "Allowed Administrative Expense" shall mean all or that portion of any Administrative Expense which has been Allowed by a Final Order of the Bankruptcy Court.

1.06    "Allowed General Unsecured Claim" shall mean any Allowed Claim that is not an Allowed Administrative Expense, Allowed Fee Claim, Allowed Secured Claim, Allowed Priority Tax Claim, Allowed Priority (Non-Tax) Claim, or Affiliate Claim.

1.07    "Allowed Priority Claim" shall mean any Allowed Claim or portion thereof entitled to priority under Bankruptcy Code sections 507(a)(3) through (a)(6).

1.08    "Allowed Secured Claim" shall mean that portion of an Allowed Claim which is secured by a valid perfected lien on property of the Debtor, to the extent of the value of the interest of the holder of such Allowed Secured Claim in the property of the Debtor as determined by the Bankruptcy Court pursuant to Bankruptcy Code section 506(a), together with interest, fees, costs and charges as may be allowed by the Bankruptcy Court under Bankruptcy Code section 506(b).

1.09    "Allowed Priority Tax Claim" shall mean any Allowed Claim or portion thereof entitled to priority under Bankruptcy Code section 507(a)(8).

1.10    "Avoidance Actions" shall mean any and all claims, suits and causes of action now held or hereinafter acquired by the Debtor, the Post-Confirmation Debtor, or its Estate, or the Debtor's creditors (a) under Bankruptcy Code sections 544, 547, 548, 549 or 550, (b) against Babine Lake Corporation and Anderson TS Holdings, LLC, and (c) against the Debtor's officers, directors or members, including, but not limited to, recoveries from the Debtor's director and officer insurance policies, subject to the releases and injunctions provided for in this Plan.

1.11    "Bankruptcy Code" shall mean title 11 of the United States Code, as amended.

1.12    "Bankruptcy Court" shall mean the United States Bankruptcy Court for the Southern District of New York, in which the Debtor's Chapter 11 Case is pending, and the United States District Court for the Southern District of New York to the extent that in respect of the Chapter 11 Case the District Court may have withdrawn reference, shall have determined to exercise original jurisdiction, or shall have sole authority to enter a final order or judgment.

1.13    "Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure.

1.14    "Beneficiaries" shall mean the holders of Class 6 Claims which will receive post-Effective Date Distributions from the Post-Consummation Trust as provided in the Plan.

1.15    "Bolan Entities Administrative Expense Claims" shall mean any Administrative Expense Claim under Bankruptcy Code section 503(b) held by one or more of the Bolan Entities.

1.16    "Bolan (BVI)" shall mean Bolan Textile (BVI), Limited, an Affiliate of Bolan (US) and Bolan (HK).

1.17    "Bolan (HK)" shall mean Bolan Textile (HK), Limited, the owner of 100% of the Debtor's membership interests.

1.18    "Bolan (US)" shall mean Bolan Textile (US), Limited, an Affiliate of Bolan (HK) and Bolan (BVI).

1.19    "Bolan Claims" shall mean, collectively, the Claims, including certain Administrative Claims, held by Bolan Entities.

1.20    "Bolan Contribution" shall mean the contribution made by one or more of the Bolan Entities in the form of (i) the payment, in Cash, of that portion of the Class 6 Payment that the Debtor cannot pay from available funds under its credit agreement with WFBC, (ii) the continued maintenance of the Bolan Pledge and Guaranty after the Confirmation Date for the benefit of WFBC, and (iii) the subordination of solely the right of payment of the Bolan Claims, including any Administrative Claims, but not the right of setoff or any defenses, to the Distributions to be made to holders of Class 6 Claims and to any present and future claims of WFBC against the Debtor.

1.21    "Bolan Entities" shall mean, collectively, Bolan (BVI), Bolan (HK) and Bolan (US).

1.22    "Bolan Pledge and Guaranty" shall mean the pledge of $200,000 and the guaranty provided by Bolan (US) to WFBC as additional security for the Debtor's obligations to repay the DIP Loan and the WFBC Secured Claim.

1.23    "Business Day" shall mean any day other than a Saturday, Sunday or legal holiday as defined in Bankruptcy Rule 9006(a).

1.24    "Cash" shall mean cash and cash equivalents, and other readily marketable securities or instruments, including, but not limited to, bank deposits, checks and other similar items.

1.25    "Chapter 11 Case" shall mean the Debtor's chapter 11 Case filed in the Bankruptcy Court.

1.26    "Claim" shall mean a claim against the Debtor, as defined in Bankruptcy Code section 101(5).

1.27    "Claimant" shall mean the holder of a Claim.

1.28    "Class" shall mean any class into which Allowed Claims and Allowed Interests are classified pursuant to Article II of the Plan.

1.29    "Class 6 Note" shall mean the promissory note that the Debtor will deliver to the Post-Consummation Trust which provides for the payment of $50,000 on the date which is 6 months after the Effective Date, and an additional $50,000 payment on the date that is one year after the Effective Date. The Class 6 Note shall be in a form acceptable to the Debtor and the Committee.

1.30    "Class 6 Payment" means the $250,000 in Cash to be delivered to the Post-Consummation Trust on the Effective Date to be used to fund the expenses of the Post-Consummation Trust and make Distributions to holders of Allowed Class 6 Claims under the Plan on a pro rata basis in accordance with the provisions of the Post-Consummation Trust Agreement.

1.31    "Commencement Date" shall mean April 12, 2011.

1.32    "Committee" shall mean the Official Committee of Unsecured Creditors appointed by the United States Trustee for Region 2 on May 6, 2011.

AROSEN/904167/V5/060000

1.33    "Confirmation Date" shall mean the date the Confirmation Order is entered in the Debtor's Case.

1.34    "Confirmation Hearing" shall mean the hearing held by the Bankruptcy Court to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

1.35    "Confirmation Order" shall mean a Final Order of the Bankruptcy Court confirming the Plan in accordance with Bankruptcy Code section 1129.

1.36    "Creditor" shall have the meaning set forth in Bankruptcy Code section 101(10).

1.37    "Debtor" shall mean TexStyle, LLC.

1.38    "DIP Loan" shall mean the debtor in possession loan provided by WFBC to the Debtor as authorized by the DIP Order.

1.39    "DIP Order" shall mean the Bankruptcy Court's Final Order, dated May 12, 2011, authorizing the Debtor to enter into the DIP Loan and to use WFBC's cash collateral and providing related relief.

1.40    "Disallowed Claim" shall mean any Claim or portion of a Claim which has been disallowed by a Final Order of the Bankruptcy Court.

1.41    "Disputed Claim" shall mean any Claim, proof of which was timely and properly filed, and (a) which is listed on the Schedules as unliquidated, disputed, or contingent, and which has not been resolved by written agreement between the Debtor and the Claimant or by an order of the Bankruptcy Court, (b) which is subject to a dispute to the extent that the Debtor or the Post-Confirmation Debtor has asserted a claim against the holder of the Disputed Claim, or (c) as to which the Debtor or the Committee has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules, which objection or request for estimation has not been withdrawn or determined by a Final Order.  Prior to (a) the filing of an objection to a Claim or (b) the expiration of the time within which to object to such Claim set forth in the Plan or otherwise established by order of the Bankruptcy Court, for purposes of the Plan, a Claim shall be considered a Disputed Claim if (a) the amount of the Claim specified in the proof of Claim exceeds the amount of the Claim scheduled by the Debtor as other than disputed, contingent or unliquidated, or (b) the Claim is not listed on the Schedules.

1.42    "Disputed Claims Reserve" shall mean the reserves to be established by the Post-Confirmation Debtor or the Distribution Agent on account of Disputed Administrative Expenses Claims, Disputed Priority Claims, and Disputed Unsecured Claims to be used to make pro rata Distributions to holders of Disputed Claims and Undetermined Claims in the event they become Allowed Claims.

1.43    "Distribute" or "Distribution" shall mean a payment by the Post-Confirmation Debtor, the Post-Consummation Trust Administrator or the Distribution Agent under the terms of the Plan.

1.44    "Distribution Agent" shall mean the Post-Consummation Trust Administrator or any Person chosen by the Post-Consummation Trust Administrator to make or facilitate Distributions provided by the Plan.

1.45    "Distribution Date" shall mean any date, subsequent to the Effective Date, on which a Distribution under the Plan is to be made to the holders of Allowed Claims.

AROSEN/904167/V5/060000

1.46    "Effective Date" shall mean the date after the Confirmation Order becomes a Final Order and all of the conditions to the Effective Date in the Plan have been satisfied or waived.

1.47    "Estate" shall mean the Debtor's chapter 11 estate created on the Commencement Date under Bankruptcy Code section 541.

1.48    "Estimation Order" shall mean an order of the Bankruptcy Court estimating for voting or distribution purposes, under Bankruptcy Code section 502(c), the allowed amount of any Claim in the Chapter 11 Case. An Estimation Order may include the Confirmation Order if the Confirmation Order grants the same relief that would have been granted in a separate Estimation Order.

1.49    "Fee Claims" shall mean claims by professionals retained by the Debtor and the Committee during the Chapter 11 Case for the payment of fees and the reimbursement of expenses incurred prior to the Effective Date.

1.50    "Final Order" shall mean: (i) an order or a judgment of the Bankruptcy Court; or (ii) a stipulation or other agreement entered into which is "so ordered" by the Bankruptcy Court, the operation or effect of which has not been reversed, stayed, modified or amended and as to which (x) any appeal that has been taken has been finally determined or dismissed or (y) the time to appeal or seek reconsideration has expired by reason of statute or otherwise and as to which no appeal or petition for review, *certiorari* or reconsideration has been taken or is pending (or if such appeal or petition has been granted, it has been finally decided), as a result of which such order, judgment, stipulation or agreement shall have become final in accordance with applicable law.

1.51    "Former Owner Claims" shall mean, collectively, the claims of Babine Lake Corporation and Anderson TS Holdings, LLC.

1.52    "General Unsecured Claim" means an Allowed Claim that is not an Administrative Expense, a Priority (Non-Tax) Claim, Priority Tax Claim, Fee Claim or Secured Claim.

1.53    "Interest" shall mean any rights of a shareholder or holder of a membership interest in respect of an equity interest in the Debtor.

1.54    "Lien" shall have the meaning set forth in Bankruptcy Code section 101(37).

1.55    "Objections Bar Date" shall mean the deadline for the Post-Confirmation Debtor or the Post-Consummation Trust Administrator to file objections to Claims, which deadline shall be the first business day that is one hundred and twenty (120) days after the Effective Date of the Plan.

1.56    "Person" shall have the meaning set forth in Bankruptcy Code section 101(41).

1.57    "Plan" shall mean this Plan of Reorganization as it may be amended or modified.

1.58    "Post-Confirmation Debtor" shall mean the Debtor after the Confirmation Date.

1.59    "Post-Consummation Trust" means that certain trust to be created on the Effective Date in accordance with the provisions of the Plan and the Post-Consummation Trust Agreement.

1.60    "Post-Consummation Trust Administrator" means the Person designated by the Committee, identified in the Plan Supplement and retained as of the Effective Date as the employee or fiduciary responsible for implementing the applicable provisions of the Plan and administering the Post-Consummation Trust in accordance with the Plan and the Post-

Consummation Trust Agreement, and any successor appointed in accordance with the Post-Consummation Trust Agreement.  As appropriate, references to the Post-Consummation Trust Administrator shall include any Distribution Agent appointed by the Post-Consummation Trust Administrator.

1.61    "Post-Consummation Trust Agreement" means that certain trust agreement, in form and substance satisfactory to the Debtor and the Committee which, among other things, (a) establishes and governs the Post-Consummation Trust, (b) sets forth the powers, duties and responsibilities of the Post-Consummation Trust Administrator and (c) provides for the liquidation and distribution of proceeds of the Post-Consummation Trust Assets.

1.62    "Post-Consummation Trust Assets" means the Class 6 Payment, the Class 6 Note and the proceeds of Avoidance Actions.

1.63    "Priority (Non-Tax) Claims" shall mean any Claim that is entitled to priority status in accordance with Bankruptcy Code section 507(a), other than Priority Tax Claims and Administrative Expenses.

1.64    "Priority Tax Claims" shall mean any Claim for taxes entitled to priority status in accordance with Bankruptcy Code section 502(i) or section 507(a)(8), but specifically excludes any penalty assessed with respect to such taxes.

1.65    "Pro Rata Share" shall mean the proportion that the Allowed Claim bears to the sum of all Allowed Claims, Disputed Claims and Undetermined Claims of that particular Class.

1.66    "Released Parties" shall have the meaning set forth in Article X of the Plan.

1.67    "Schedules" shall mean the schedules of assets and liabilities, lists and statement of financial affairs and executory contracts filed by the Debtor with the Bankruptcy Court, as they may be amended pursuant to the Bankruptcy Rules.

1.68    "Unclaimed Property" shall mean any Cash (together with any interest earned thereon) unclaimed on the later of the 180th day following the Effective Date or the last Distribution Date. Unclaimed Property shall include checks (and the funds represented thereby): (i) which have been returned as undeliverable without proper forwarding addresses; (ii) which have not been paid; or (iii) which were not mailed or delivered because of the absence of a proper address for the Claimant.

1.69    "Undetermined Claim" shall mean any Claim that is (i) a Disputed Claim or (ii) an unliquidated or contingent Claim.

1.70    "Unsecured Creditor" shall mean the holder of an Unsecured Claim.

1.71    "WFBC" means Wells Fargo Bank, NA, including its Wells Fargo Business Credit operating division.

1.72    "WFBC Secured Claim" shall mean the Allowed Secured Claim of WFBC which is secured by a valid first-priority lien on substantially all of the Debtor's assets.

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTERESTS

2.01    General Rules of Classification.  A Claim or Interest is classified in a particular Class for voting and distribution purposes only to the extent the Claim or Interest qualifies within the description of that Class, and is classified in other Classes to the extent the Claim or Interest qualifies within the description of such Classes.

AROSEN/904167/V5/060000

2.02    Administrative Expenses and Priority Tax Claims.  Administrative Expenses and Priority Tax Claims have not been classified and are excluded from the Classes of Claims in accordance with Bankruptcy Code section 1123(a)(1).

2.03    Satisfaction of Claims and Interests. The treatment to be provided for Allowed Claims and Interests under this Plan and the consideration provided under this Plan shall be in full satisfaction, settlement, release and discharge of all Claims and Interests against the Debtor and its property.

2.04    Bar Dates for Claims. Pursuant to the Bankruptcy Court's Order, dated May 26, 2011, all non-governmental unit Claims against the Debtor were to be filed on or before July 1, 2011, and all Claims of governmental units must be filed by October 11, 2011.  Claims arising from the rejection of executory contracts and unexpired leases shall be governed by the specific orders of the Bankruptcy Court regarding the assumption or rejection of executory contracts and unexpired leases and Article VII of the Plan.

2.05    Bar Date for Fee Claims. The Confirmation Order or the order scheduling the Confirmation Hearing shall provide a deadline for the filing of requests for payment of Fee Claims incurred prior to the Confirmation Date.  Any Person that fails to file an application for the payment of professional fees and expenses on or before the time and date established in the Confirmation Order or the order scheduling the Confirmation Hearing shall be forever barred from seeking payment or reimbursement from the Debtor, its Estate or the Post-Confirmation Debtor.

2.06    Acceptance of Classification.  Any holder of a Claim or Interest who fails to object in writing to the classification of Claims and Interests provided in the Plan, and who has not filed an objection with the Bankruptcy Court and served the objection upon counsel to the Debtor, WFBC, the Committee and the U.S. Trustee at least ten (10) days prior to the Confirmation Hearing shall be deemed to have accepted the classification set forth in the Plan.

2.07    Classification.  For purposes of the Plan, all Allowed Claims shall be placed in the following Classes:

> ➢ Class 1 (Allowed Priority (Non-Tax) Claims)
> ➢ Class 2 (Allowed WFBC Secured Claims
> ➢ Class 3 (Claims of Anderson TS Holdings and Babine Lake Corp.)
> ➢ Class 4 Claims (Other Secured Creditors)
> ➢ Class 5 Claims (Claims of Suzhou Glacier Import & Export)
> ➢ Class 6 Claims (General Unsecured Claims)
> ➢ Class 7 Claims (Claims of Bolan Entities)
> ➢ Class 8 Interests (Interests in the Debtor)

## ARTICLE III

### TREATMENT OF CLASSES

3.01    Administrative Expenses.  Administrative Expenses are not impaired.  All Allowed Administrative Expenses shall be paid in full within thirty (30) days after the Effective Date, or at such other date and upon such other terms as may be agreed to by the holder and the Debtor. In the event of any subsequent conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, all payments on account of any Allowed Administrative Expenses shall be deemed to have been made in the ordinary course of the Debtor's business and shall not be deemed to be avoidable transfers under Bankruptcy Code section 547. Holders of Allowed Administrative Expenses shall not be entitled to vote on the Plan.

AROSEN/904167/V5/060000

3.02    The Bolan Administrative Expense Claims. Allowed Administrative Expense Claims of the Bolan Entities, including claims under Bankruptcy Code section 503(b)(9) for goods delivered to the Debtor within twenty (20) days of the Commencement Date, are entitled to be paid in full on the Effective Date, but for the purposes of providing the Bolan Contribution in order to facilitate confirmation of the Plan, the holders of the Bolan Administrative Expense Claims will subordinate payment of such Claims to the Distribution of the Class 6 Payment and the proceeds of the Avoidance Actions to the holders of Allowed Class 6 Claims.

3.03    U.S. Trustee Fees.  Statutory fees, and any applicable interest thereon, are all fees payable pursuant to Chapter 123 of Title 28, United States Code, including, but not limited to, all fees required to be paid by 28 U.S.C. §1930(a)(6) ("U.S. Trustee Fees").  U.S. Trustee Fees will accrue and be timely paid until the Case is closed, dismissed, or converted to another chapter of the Bankruptcy Code.  Any U.S. Trustee Fees owed on or before the Effective Date of this Plan will be paid in full on the Effective Date of the Plan.  The Debtor shall remain responsible for any and all U.S. Trustee fees that become due and shall pay same on a timely basis.

3.04    Priority Tax Claims.  Priority Tax Claims are not impaired.  All Allowed Priority Tax Claims shall be paid in full, in Cash.  Holders of Priority Tax Claims shall not be entitled to vote on the Plan.  Priority Tax Claims will be paid in full on the Effective Date. Although the tax claims could be filed against the Debtor up to October 1, 2011, the Debtor believes that it is current on all of its tax obligations.

3.05    Class 1 Allowed Priority (Non-Tax) Claims.  Allowed Priority (Non-Tax) Claims shall be paid in full, in Cash In accordance with Bankruptcy Code section 1126(f), holders of Class 1 Claims shall not be entitled to vote on the Plan and shall be deemed to have accepted the Plan. The Class 1 Claims will be paid in full on the Effective Date. Class 1 Claims are not impaired.

3.06    Class 2 WFBC Secured Claim.  The Class 2 Claim shall be the Allowed Secured WFBC Claim, which is secured by a first-priority lien on substantially all of the Debtor's assets. On the Effective Date, WFBC's Secured Claim shall be paid in full utilizing the proceeds of a new credit facility provided by WFBC to the Post-Confirmation Debtor under substantially the same terms as the DIP Loan. The Class 2 Claim is impaired.

3.07    Class 3 Former Owner Claims. The Class 3 Claims consist of the Disputed Secured Claims of Babine Lake Corporation and Anderson TS Holdings, LLC. The Class 3 claim is contractually subordinated to the secured claims of WFBC. The Debtor or the Committee may file an adversary proceeding or an objection to the secured portion of the Class 3 Claims and, if successful, the remaining portion of the Class 3 Claims will be treated as a Class 6 Claim. To the extent that the Class 3 Claim is a secured claim, the holders of the Class 3 Claims shall retain their Liens in the Debtor's assets in the same priority and with the same enforceability as existed on the Commencement Date. Class 3 Claims are impaired.

3.08    Class 4 Other Secured Claims. The Class 4 Claims consist of secured claims other than the WFBC Secured Claim. On the Effective Date, holders of Class 4 Claims will be paid 100% of their Allowed Claims or shall retain their Liens in the Debtor's assets in the same priority and with the same enforceability as existed on the Commencement Date. Class 4 Claims are not impaired.

3.09    Class 5 Claim of Suzhou Glacier Import & Export. The Class 5 Claim consists of the unsecured claim of Suzhou Glacier Import & Export which is guaranteed by Karen Wang, one of the Debtor's Interest holders, or her Affiliate. That guaranty is secured by a pledge of certain real property located in Shanghai China, known as Rooms 1007 and 1008, 10th Floor,

Junjiang International Mansion, No. 228, Ningguo Road, Yangpu 200090, Shanghai, China. In full satisfaction of the Allowed Class 5 Claim, the holder of the Class 5 Claim shall receive from the Post-Confirmation Debtor an amount equal to the pro rata Distribution the holder of the Class 5 Claim would have received if the Claim had been treated as a Class 6 Claim under the Plan, less any amounts or value actually received by the holder of the Class 5 Claim as a result of the guaranty and the pledge. The holder of the Class 5 Claim shall retain all of its rights with respect to the guaranty issued by Karen Wang, or her Affiliate, and the pledge of real property in Shanghai, China to secure that guaranty. The Class 5 Claim is impaired.

3.10    Class 6 General Unsecured Claims. Class 6 Claims are comprised of the Allowed Claims of General Unsecured Creditors. Each holder of an Allowed General Unsecured Claim shall receive Distributions of its Pro Rata Share of the Class 6 Payment, the proceeds of the payments made under the Class 6 Note, and the proceeds of the Avoidance Actions in full satisfaction of its Allowed Claim. Class 6 Claims are impaired and are entitled to vote on the Plan.

3.11    Class 7 Claims of Bolan (HK) and Bolan (US).  Class 7 Claims consist of the Allowed Claims of the Bolan Entities which are Affiliate Claims. The Claims of Bolan Entities shall be subordinated solely in right of payment, but not the right of setoff or any defenses, to the Distributions to holders of Class 6 General Unsecured Claims and shall not receive any Distribution under the Plan. The Bolan Claims shall not be subject to the discharge and injunctive provisions of the Plan and, after the Effective Date, the Post-Confirmation Debtor shall continue to be liable to pay the Claims of Bolan Entities; provided, however, that after the Confirmation Date, the payment of the Claims of Bolan Entities by the Post-Confirmation Debtor shall be subordinated in right of payment to (a) the payment of WFBC's Secured Claims under the Plan and the obligations owed to WFBC under the credit facility to be provided to the Debtor by WFBC after the Confirmation Date, and (b) the Class 6 Payment and the payment of the Class 6 Note. The holders of Class 7 Claims are impaired and are entitled to vote on the Plan.

3.12    Class 8 Interests.  Class 8 Interests shall retain their interests in the Debtor but shall receive no Cash or other property under the Plan.  Class 8 Interest holders are not entitled to vote and shall be deemed to have accepted the Plan. Class 8 Interests are unimpaired.

## ARTICLE IV

## CLAIMS AND INTERESTS IMPAIRED UNDER THE PLAN

4.01    Claims in Classes 2, 3, 5, 6 and 7 are impaired under the Plan. The holders of Claims in Classes 2, 3, 5, 6 and 7 are entitled to vote on the Plan. Classes 1, 4 and 8 are not impaired and shall be deemed to have accepted the Plan.

4.02    Pursuant to Bankruptcy Code section 1126(c), a Class of Claims shall have accepted the Plan if the Plan is accepted by the holders of at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the holders of allowed Claims in such Class that vote on the Plan.

4.03    To the extent that any Class rejects the Plan, the Debtor and the Committee intend to seek confirmation of the Plan in accordance with Bankruptcy Code section 1129(b).

AROSEN/904167/V5/060000

# ARTICLE V

## MEANS FOR IMPLEMENTATION OF THE PLAN

5.01    No later than two (2) business days before the Confirmation Date, the Class 6 Payment shall be deposited into a separate account maintained by the Debtor at WFBC.

5.02    On the Effective Date or as soon thereafter as is reasonably practical, the Debtor will have the Cash necessary to pay in full Allowed Fee Claims, Allowed Priority (Tax) Claims and Priority (Non-Tax) Claims.

5.03    On the Effective Date or as soon thereafter as is reasonably practical, the Distribution Agent shall establish the Post-Consummation Trust for the benefit of holders of Class 6 Claims. The Post-Consummation Trust shall consist of the Class 6 Payment, the Class 6 Note and the proceeds of Avoidance Actions. The Post-Consummation Trust Agreement shall provide for the appointment of the Post-Consummation Trust Administrator and the payment of the expenses of the Post-Consummation Trust.

5.04    On the Effective Date, the Avoidance Actions, the Class 6 Note and the Class 6 Payment shall be transferred to the Post-Consummation Trust. The Class 6 Payment shall be funded by the Debtor to the extent there is availability under and the Debtor's credit facility with WFBC. To the extent necessary, the Class 6 Payment will be funded by one or more of the Bolan Entities The Post-Consummation Trust Administrator shall pursue recoveries of the Avoidance Actions and shall deposit the recoveries or settlements on account of the Avoidance Actions into the Post-Consummation Trust to be distributed in accordance with the Plan and Post-Consummation Trust Agreement.

5.05    On the Effective Date, or as soon thereafter as is reasonably practical, after the Debtor transfers the Class 6 Payment to the Post-Consummation Trust, the Post-Consummation Trust Administrator shall establish and maintain adequate reserves for Disputed Claims

5.06    On the Effective Date, or as soon thereafter is reasonably practicable, the Post-Confirmation Debtor shall use available Cash to pay in full, or establish appropriate reserves for: (i) Allowed Administrative Expenses, including Fee Claims, (ii) Priority Tax Claims and (iii) Priority (Non-Tax) Claims, in accordance with the Plan.

5.07    Investments by the Post-Consummation Trust Administrator.  All Cash held by the Post-Consummation Trust Administrator shall be invested in accordance with Bankruptcy Code section 345 in a financial institution that is an authorized depository in the Southern District of New York, or as otherwise permitted by a Final Order of the Bankruptcy Court during the Chapter 11 Case and as deemed appropriate by the Post-Consummation Trust Administrator.  The earnings on such investments shall be retained for the benefit of the Post-Consummation Trust.

5.08    Delivery of Distributions.  Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, Distributions to the holders of Allowed Claims shall be made at (a) the address of each holder as set forth in the Schedules, unless superseded by the address set forth on proofs of Claim filed by such holder or (b) the last known address of such holder if no proof of Claim is filed or if the Debtor or the Distribution Agent have been notified in writing of a change of address.  If any Distribution is returned as undeliverable, the Distribution Agent may, in its discretion, make such efforts to determine the current address of the holder of the Claim with respect to which the Distribution was made as the Distribution Agent deems appropriate, but no Distribution to any holder shall be made unless and until the Distribution Agent has

AROSEN/904167/V5/060000

determined the then-current address of the holder of such Allowed Claims, at which time the Distribution to such holder shall be made to the holder without interest.  Amounts in respect of any undeliverable Distributions made by the Distribution Agent shall be returned to, and held in trust by, the Distribution Agent, until the Distributions are claimed or are deemed to be Unclaimed Property upon the expiration of three (3) months from the return of the undeliverable Distribution.  The Distribution Agent shall have the discretion to determine how to make Distributions in the most efficient and cost-effective manner possible; provided, however, that its discretion may not be exercised in a manner inconsistent with any express requirements of the Plan or the Post-Consummation Trust Agreement.

5.09    Record Date for Distributions.  Except as otherwise provided in a Final Order of the Bankruptcy Court, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 on or prior to the date of the entry of the Confirmation Order will be treated as the holders of those Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to the transfer may not have expired by the date of the entry of the Confirmation Order. The Post-Confirmation Debtor and the Distribution Agent shall have no obligation to recognize any transfer of any Claim occurring after the date of the entry of the Confirmation Order. In making any Distribution with respect to any Claim, the Post-Confirmation Debtor and the Distribution Agent shall be entitled instead to recognize and deal with, for all purposes hereunder, only the Person that is listed on the proof of Claim filed with respect thereto or on the Schedules as the holder thereof as of the close of business on the date of the entry of the Confirmation Order and upon such other evidence or record of transfer or assignment that are known to the Post-Confirmation Debtor as of the date of the entry of the Confirmation Order.

5.10    Distributions to Holders of Claims – Generally.

(a)    Distributions on Account of Allowed Claims Only.  Except as otherwise provided in this Plan, Disputed Claims shall not be entitled to any Distribution until such Disputed Claim becomes an Allowed Claim. All Claims of any Person from which property is sought by the Debtor, the Post-Confirmation Debtor or the Distribution Agent, as applicable, under Bankruptcy Codes sections 542, 543, 550, or 553, or that the Debtor or the Post-Confirmation Debtor alleges is a transferee of a transfer that is avoidable under Bankruptcy Code sections 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) shall be disallowed if such Person or transferee has failed to turnover such property to the Post-Confirmation Debtor or the Post-Consummation Trust Administrator.

(b)    Method of Cash Distributions.  Any payment of Distributable Cash to be made pursuant to the Plan will be in U.S. dollars and may be made by draft, check, wire transfer, or as otherwise required or provided in any relevant agreement or applicable law.

(c)    Distributions on Non-Business Days.  Any payment or Distribution due on a day other than a Business Day may be made, without interest, on the next Business Day.

(d)    No Distribution in Excess of Allowed Amount of Claim.  Notwithstanding anything to the contrary herein, no holder of an Allowed Claim shall receive in respect of such Claim any Distribution (of a value set forth herein or in the Disclosure Statement) in excess of such Claim any Distribution (of a value set forth herein or in the Disclosure Statement) in excess of the Allowed amount of such Claim.

(e)    Interest on Claims.  Except as specifically provided for in the Plan or the Confirmation Order, interest shall not accrue on Claims and no holder of a Claim shall be entitled to interest accruing on or after the Commencement Date on any Claim.  Interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Commencement Date to the date a final Distribution is made thereon if and after that Disputed Claim becomes an

Allowed Claim. Except as expressly provided herein or in a Final Order of the Bankruptcy Court, no prepetition Claim shall be allowed to the extent that it is for postpetition interest or other similar charges.

(f)　　Disputed Payments. If any dispute arises as to the identity of a holder of an Allowed Claim who is to receive any Distribution, the Post-Confirmation Debtor or the Post-Consummation Trust Administrator may, in lieu of making such Distribution to such Person, make such Distribution into an escrow account or hold such Distribution in reserve until the disposition thereof shall be determined by Bankruptcy Court order or by written agreement among the interested parties to such dispute.

(g)　　Withholding Taxes. Any federal or state withholding taxes or other amounts required to be withheld under any applicable law may be deducted and withheld from any Distributions under the Plan. All Persons holding Claims shall be required to provide any information necessary to effect the withholding of such taxes. The Post-Confirmation Debtor or the Distribution Agent may withhold the entire Distribution due to any holder of an Allowed Claim until such time as such holder provides the necessary information to comply with any withholding requirements of any governmental unit. Any property so withheld will then be paid by the Distribution Agent to the appropriate authority. If the holder of an Allowed Claim fails to provide the information necessary to comply with any withholding requirements of any governmental unit within six (6) months from the date of first notification to the holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then such holder's Distribution shall be treated as Unclaimed Property herein or the amount required to be withheld may be so withheld and turned over to the applicable authority.

(h)　　Time Bar to Cash Payments by Check. Checks issued by the Distribution Agent on account of Allowed Claims shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof. Requests for the reissuance of any check that becomes null and void pursuant to this Section may be made directly to the Distribution Agent by the holder of the Allowed Claim to whom the check was originally issued. Any Claim in respect of such voided check must be made in writing on or before the later of the first anniversary of the Effective Date or the six (6) month anniversary of the date on which the Distribution was made. After that date, all Claims in respect of voided checks shall be discharged and forever barred and the proceeds of those checks shall be deemed Unclaimed Property in accordance with Bankruptcy Code section 347(b) and be distributed as provided herein.

(i)　　No Payments of Fractional Dollars. Notwithstanding any other provision of the Plan to the contrary, no payment of fractional dollars shall be made pursuant to the Plan. Whenever any payment of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding down of such fraction to the nearest whole dollar.

(j)　　Setoff and Recoupment. The Post-Confirmation Debtor or the Distribution Agent may, but shall not be required to, setoff against, or recoup from, any Claim and the Distributions to be made pursuant to the Plan in respect thereof, any claims or defenses of any nature that the Debtor or the Estate may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtor, the Estate, the Post-Confirmation Debtor or the Post-Consummation Trust of any right of setoff, recoupment claims, rights or Avoidance Actions that the Debtor, the Estate, the Post-Consummation Trust or any of their successors may possess against such holder. Any setoff or recoupment shall only be made after the affected creditor is provided not less than five days notice.

AROSEN/904167/V5/060000

5.11　Unclaimed Property.

(a)　Escrow of Unclaimed Property.　The Distribution Agent shall hold all Unclaimed Property (and all interest, dividends, and other distributions thereon), for the benefit of the holders of Claims entitled thereto under the terms of the Plan.

(b)　Distribution of Unclaimed Property.　At the end of one (1) year following the relevant Distribution Date of particular Cash or other property to be distributed under the Plan, the holders of Allowed Claims entitled to Unclaimed Property held pursuant to this Section shall be deemed to have forfeited such property, and all right, title and interest in and to such property shall immediately and irrevocably revest in the Post-Consummation Trust, for deposit into the Post-Consummation Trust in the case of Unclaimed Property related to Allowed General Unsecured Claims.

5.12　At the end of one hundred twenty (120) days following a Distribution Date, all unclaimed Distributions together with the interest thereon, shall be deposited into the Post-Consummation Trust for distribution in accordance with the Plan.

5.13　Quarterly Reports.　Until the Chapter 11 Case is closed, converted or dismissed, whichever is earlier, the Distribution Agent shall file quarterly reports setting forth (a) the status of Distributions to holders of Allowed Class 6 Claims and (b) the status of any Avoidance Actions.　The quarterly reports shall be filed on or before the 15th day of July, October, January and April. In addition, the Distribution Agent shall maintain an accurate register of the General Unsecured Claims.

5.14　As of the Effective Date, pursuant to provisions of Bankruptcy Code sections 1141(b) and (c), all property and assets of the Debtor, except for the Avoidance Actions, the Class 6 Payment and the Class 6 Note, shall be transferred to and shall vest in the Post-Confirmation Debtor free and clear of all Liens, Claims and Interests, except as otherwise expressly provided in this Plan and the Confirmation Order.

5.15　Unless otherwise agreed to by the claimant, immediately after the earlier of a Final Order of the Bankruptcy Court or the occurrence of the Effective Date, the Debtor or the Post-Confirmation Debtor shall pay all Allowed Administrative Expense Claims, including Fee Claims.

5.16　Continuing Existence.　From and after the Effective Date, the Post-Confirmation Debtor will continue in existence and shall be vested with all of the Debtor's assets. All of the Debtor's ownership interests in Glensara Holdings (HK), Limited, TexStyle Asia Trading Co., Limited and TexStyle Asia Co., Limited will be unaffected by confirmation of the Plan. In addition, the Debtor's membership interests will be unaffected by confirmation of the Plan.

5.17　Debtor's ownership interests in Glensara Holdings (HK), Limited, TexStyle Asia Trading Co., Limited and TexStyle Asia Co., Limited will be unaffected by the Plan or confirmation of the Plan.

5.18　Dissolution of Creditors' Committee.　Upon the Effective Date, the Committee will cease to exist, except for the purposes of seeking Fee Claims and reimbursement of the reasonable expenses of the members of the Committee.

## ARTICLE VI

## EXECUTORY CONTRACTS AND LEASES

6.01　Any executory contract or unexpired lease of the Debtor which has not been assumed or rejected by Final Order of the Bankruptcy Court, or which is not the subject of a

AROSEN/904167/V5/060000

pending motion to assume or reject on the Confirmation Date, shall be deemed assumed by the Debtor on the Effective Date.

6.02    Any entity with a Claim that arises from the rejection of an executory contract or unexpired lease must file its Claim within thirty (30) days after the earlier of the date of the order rejecting the executory contract or unexpired lease and the Confirmation Date, and shall have the same rights as a Class 6 Claimant to the extent such Claim becomes an Allowed General Unsecured Claim.

## ARTICLE VII

### PROCEDURE FOR RESOLVING DISPUTED CLAIMS

7.01    <u>Disputed Claim Reserves</u>. The Post-Confirmation Debtor and the Post-Consummation Trust Administrator shall set aside and reserve for the benefit of each holder of a Disputed Claim, an amount equal to the Distributions to which the holder of such Disputed Claim would be entitled if such Disputed Claim were an Allowed Claim, in an amount equal to (i) the amount of such Claim as estimated by the Bankruptcy Court pursuant to an Estimation Order or (ii) if no Estimation Order has been entered with respect to such Claim, the greater of (x) the amount listed in the Schedules and (y) the amount set forth in a proof of claim or application for payment filed with the Bankruptcy Court or pursuant to an order of the Bankruptcy Court entered in the Chapter 11 Case.  Such reserved amounts and the difference between the amount so reserved for each such Claim and the amount of federal, state and local taxes paid by the Post-Confirmation Debtor or the Post-Consummation Trust Administrator with respect to such Claim shall constitute the maximum Distribution amount to which the holder of such Claim may ultimately become entitled to receive.

7.02    <u>Distributions to Holders of Allowed Claims</u>. Distributions from the Post-Consummation Trust. After the Effective Date, the Distribution Agent shall make one or more Distributions to holders of Allowed Claims in accordance with the Plan.

(i)    Distributions on Disputed Claims.  No Distributions shall be made with respect to a Disputed Claim until the resolution of such dispute by agreement with the Post-Confirmation Debtor or the Distribution Agent, or Final Order.  On or as soon as reasonably practicable after the first Business Day of the next calendar quarter after a Disputed Claim becomes an Allowed Claim, the Post Consummation Debtor or the Distribution Agent shall distribute to the holder thereof Cash, from the Disputed Claims Reserve, in an amount equal to the aggregate amount of Cash that would have been distributed to such holder in respect of such Claim had such Claim been an Allowed Claim, in the amount in which it is ultimately allowed.

(ii)    Treatment of Excess Cash in Disputed Claims Reserve.  To the extent a Disputed Class 6 Claim becomes a Disallowed Claim or is reclassified, any Cash previously reserved for such portion of such Disputed Claim shall deposited into the Post-Consummation Trust.

7.03    <u>Resolution of Disputed Claims</u>.  Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, after the Confirmation Date the Post-Consummation Trust Administrator shall have the exclusive right to make and file objections to Class 3 and 6 Claims and shall serve a copy of each objection upon the holder of the Claim to which the objection is made, counsel to the Debtor and counsel to WFBC as soon as practicable, but in no event later than the Objections Bar Date.  The Post-Confirmation Debtor shall have the right to object to all other Claims. From and after the Confirmation Date, all objections shall be litigated to a Final

Order except to the extent the Post-Confirmation Debtor or the Post-Consummation Trust Administrator elects to withdraw any claim objection or Post-Confirmation Debtor or the Post-Consummation Trust Administrator and the claimant elect to compromise, settle or otherwise resolve any claim objection, in which event they may settle, compromise or otherwise resolve any Disputed Claim on reasonable written notice to counsel to the Debtor and WFBC but without approval of the Bankruptcy Court. A Disputed Claim as to which no objection is filed by the Objections Bar Date shall become an Allowed Claim.

7.04    <u>Maintenance of Disputed Claims Reserve</u>. To the extent that the property placed in a Disputed Claims Reserve consists of Cash, that Cash shall be deposited in an interest-bearing account in a financial institution that is an authorized depository in the Southern District of New York. The property in the Disputed Claims Reserve shall be held in trust for the benefit of the holders of Class 6 Claims which are ultimately allowed. The Disputed Claims Reserve shall be closed and extinguished by the Distribution Agent when all Distributions and other dispositions of Cash or other property required to be made hereunder from such reserves will have been made in accordance with the terms of the Plan.

## ARTICLE VIII

## THE POST-CONSUMMATION TRUST AND POST-CONSUMMATION TRUST ADMINISTRATOR

8.01    Generally.    The powers, authority, responsibilities and duties of the Post-Consummation Trust and the Post-Consummation Trust Administrator are set forth in and will be governed by the Post-Consummation Trust Agreement. The Committee shall appoint the Post-Consummation Trust Administrator.

8.02    Purpose of Post-Consummation Trust.    The Post-Consummation Trust will be established for the primary purpose of liquidating its assets with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Post-Consummation Trust. The Debtor will have no reversionary or further interest in or with respect to the Post-Consummation Trust Assets or the Post-Consummation Trust upon their transfer of the Post-Consummation Trust Assets. For all federal income tax purposes, the Beneficiaries of the Post-Consummation Trust will be treated as grantors and owners of the trust and it is intended that the Post-Consummation Trust be classified as a liquidating trust under 26 C.F.R. § 301.7701-4 and that the Post-Consummation Trust is owned by the Beneficiaries. Accordingly, for federal income tax purposes, it is intended that the Beneficiaries be treated as if they had received a distribution of an undivided interest in the Post-Consummation Trust Assets and then contributed such interests to the Post-Consummation Trust. Accordingly, the Post-Consummation Trust will, in an expeditious but orderly manner, liquidate and convert to Cash the Post-Consummation Trust Assets, make timely distributions to the Beneficiaries pursuant to the Plan and not unduly prolong its duration. The Post-Consummation Trust will not be deemed a successor in interest of the Debtor for any purpose other than as specifically set forth herein or in the Post-Consummation Trust Agreement. The Post-Consummation Trust is intended to qualify as a "grantor trust" for federal income tax purposes with the Beneficiaries treated as grantors and owners of the trust.

8.03    Transfer of Assets to Post-Consummation Trust. The Debtor and the Post-Consummation Trust Administrator will establish the Post-Consummation Trust on behalf of the Beneficiaries pursuant to the Post-Consummation Trust Agreement, with the Beneficiaries to be treated as the grantors and deemed owners of the Post-Consummation Trust Assets. The Debtor will, as set forth below, transfer, assign and deliver to the Post-Consummation Trust, on

AROSEN/904167/V5/060000

behalf of the Beneficiaries, all of its rights, title and interest in the Class 6 Payment, the Class 6 Note and the Avoidance Actions. The Post-Consummation Trust will accept and hold the assets it receives as Post-Consummation Trust Assets in the Post-Consummation Trust for the benefit of the Beneficiaries, subject to the Plan and the Post-Consummation Trust Agreement.

8.04    Vesting of Assets. On the Effective Date, the Class 6 Payment, the Class 6 Note and the Avoidance Actions will vest and be deemed to vest in the Post-Consummation Trust as Post-Consummation Trust Assets in accordance with Bankruptcy Code section 1141.  Upon the transfer by the Debtor of the Class 6 Payment, the Class 6 Note and the Avoidance Actions to the Post-Consummation Trust, the Debtor will have no interest in or with respect to those assets, the Post-Consummation Trust Assets or the Post-Consummation Trust.

8.05    Expenses of the Post-Consummation Trust.  As more fully described in the Post-Consummation Trust Agreement, Cash held by the Post-Consummation Trust will be applied as follows: (i) first, to fees, costs and expenses of the Post-Consummation Trust Administrator; (ii) second, to satisfy the costs and expenses necessary to perform the duties of the Post-Consummation Trust, including, but not limited to, professional fees and expenses related to the Avoidance Actions and objections to Claims.

8.06    Insurance. The Post-Consummation Trust may maintain customary insurance coverage for the protection of Persons serving as administrators and overseers of the Post-Consummation Trust (including the Post-Consummation Trust Administrator) on and after the Effective Date.

8.07    Post-Consummation Trust Implementation. On the Effective Date, the Post-Consummation Trust will be established and become effective for the benefit of the holders of Allowed Class 6 Claims entitled to distributions from the Post-Consummation Trust under the Plan.  The Post-Consummation Trust Agreement will be in form and substance agreeable to the Debtor and the Committee and will contain customary provisions for trust agreements utilized in comparable circumstances, including any and all provisions necessary to ensure continued treatment of the Post-Consummation Trust as a grantor trust and the Beneficiaries as the grantors and owners thereof for federal income tax purposes.  All relevant parties (including the Debtor, the Post-Consummation Trust Administrator and the Beneficiaries) will take all actions necessary to cause title to the Post-Consummation Trust Assets to be transferred to the Post-Consummation Trust.

8.08    Termination of Post-Confirmation Trust. The Post-Consummation Trust will terminate as soon as practicable, but in no event later than the second anniversary of the Effective Date; provided that, no more than ninety (90) days prior to such termination, the Bankruptcy Court, upon motion by a party in interest, may extend the term of the Post-Consummation Trust for a finite period if such an extension is necessary to liquidate the Post-Consummation Trust Assets or to complete any distribution required by the Plan.  Multiple extensions may be obtained so long as Bankruptcy Court approval is obtained no more than ninety (90) days prior to the expiration of each extended term.  The Post-Consummation Trust Administrator may, but shall not be required to, seek an opinion of counsel or a favorable ruling from the Internal Revenue Service that any extension would not adversely affect the status of the Post-Consummation Trust as a grantor trust for federal income tax purposes.

8.09    Termination of Post-Confirmation Trust Administrator. The duties, responsibilities and powers of the Post-Consummation Trust Administrator will terminate in accordance with the terms of the Post-Consummation Trust Agreement.

8.10    Professionals; Exculpation; Indemnification. The Post-Consummation Trust Administrator may retain and compensate professionals in accordance with the Post-

AROSEN/904167/V5/060000

Consummation Trust Agreement, including professionals who have been or are currently retained as Estate professionals in accordance with the terms of the Post-Consummation Trust Agreement. The Post-Consummation Trust, the Post-Consummation Trust Administrator, and the professionals retained by the Post-Consummation Trust and their representatives will be exculpated and indemnified pursuant to the terms of the Post-Consummation Trust Agreement and the Plan, but in no event shall they be indemnified for any act or omission which constitutes gross negligence, willful misconduct, criminal conduct or breach of fiduciary duty.

8.11    No Agency Relationship. The Post-Consummation Trust Administrator and the Distribution Agent shall not be deemed to be the agent for any Claim holders in connection with the funds held or distributed pursuant to this Plan. The Post-Consummation Trust Administrator and Distribution Agent shall not be liable for any mistake of fact or law or error of judgment or any act or omission of any kind unless it constitutes gross negligence, willful misconduct, criminal conduct or breach of fiduciary duty on the part of the Post-Consummation Trust Administrator or the Distribution Agent.

# ARTICLE IX

## RETENTION OF JURISDICTION

9.01    The Bankruptcy Court shall retain jurisdiction of the Debtor and the Chapter 11 Case pursuant to chapter 11 of the Bankruptcy Code and for the purposes set forth in Bankruptcy Code section 1127(b), including, without limitation, with respect to the following matters;

(a)    to enable the Post-Consummation Trust Administrator to prosecute the Avoidance Actions;

(b)    to hear and determine all Avoidance Actions and any disputes concerning the classification, allowance or disallowance of any Claim;

(c)    to resolve any disputes concerning any funds held in the Disputed Claims Reserves;

(d)    to hear and determine all disputed issues relating to a security or ownership interest in any property of the Debtor's Estate or in any proceeds thereof;

(e)    to hear and determine all Claims arising out of any agreement entered into by the Debtor after the Commencement Date;

(f)    to recover all assets and property of the Debtor wherever located;

(g)    to alter, modify and amend the Plan pursuant to Bankruptcy Code section 1127 or to remedy any defect, cure any omissions, or reconcile any inconsistency in the Plan and Confirmation Order as may be necessary to carry out the purpose and intent of the Plan and to extent authorized by the Bankruptcy Code or Bankruptcy Rules;

(h)    to hear and determine such other matters as may be provided for in the Confirmation Order and for the purposes set forth in Bankruptcy Code sections 1127(b) and 1142 or in Bankruptcy Rules 1019 and 3020(d);

(i)    to hear and determine all applications for compensation of professionals for services rendered and expenses incurred through the Confirmation Date and thereafter to hear and determine any objections to compensation of professionals;

(j)    to hear and determine any and all pending applications, adversary proceedings, contested matters and litigated matters;

AROSEN/904167/V5/060000

(k)     to hear and determine any disputed issues with respect to the payments to be made under the Plan, including the Class 6 Note;

(l)     to enter orders that are necessary or appropriate to carry out the provisions of the Plan, including orders interpreting the provisions of the Plan;

(m)     to enter a Final Order or decree concluding the Debtor's Chapter 11 Case; and

(n)     to determine such other matters as may be provided for in the Confirmation Order or as may be authorized under the provisions of the Bankruptcy Code.

# ARTICLE X

## CONFIRMATION AND THE EFFECTIVE DATE

10.01   Conditions Precedent to Confirmation. The following are the conditions precedent to the Confirmation of the Plan:

(a)     The Debtor's deposit of the Class 6 Payment into the Distribution Account;

(b)     All terms, conditions and provisions of the Plan are approved in the Confirmation Order;

(c)     The proposed Confirmation Order shall be in form and substance acceptable to the Debtor, WFBC and the Committee; and

(d)     WFBC's agreement to provide the Post-Confirmation Debtor with a new credit facility of up to $4.5 million upon substantially the same terms and conditions as the DIP Loan.

The conditions precedent set forth in subparagraphs (a), (b) and (c), above, may be waived by the Debtor only with the Committee's consent which shall not be unreasonably withheld. The condition precedent set forth in subparagraph (d), above, may be waived by the Debtor without regard to the Committee's consent.

10.02   Conditions Precedent to the Effective Date.  The following are the conditions precedent to the Effective Date of the Plan:

(a)     The Bankruptcy Court shall have entered the Confirmation Order confirming the Plan and the Confirmation Order having become a Final Order;

(b)     The Debtor shall have sufficient Cash to pay in full all Allowed Administrative Expenses, including Fee Claims, all Allowed Priority Claims and U.S. Trustee fees;

(c)     The execution of a Post-Consummation Trust Agreement in form and substance acceptable to the Debtor and the Committee; and

(d)     The Debtor shall have delivered the Class 6 Payment and the Class 6 Note to the Post-Consummation Trust Administrator.

AROSEN/904167/V5/060000

10.03 **Discharge of Claims. PURSUANT TO BANKRUPTCY CODE SECTION 1141(d)(1), CONFIRMATION OF THE PLAN WILL DISCHARGE ALL CLAIMS AGAINST THE DEBTOR WHICH AROSE PRIOR TO THE CONFIRMATION DATE. IN ADDITION, NO HOLDER OF A CLAIM AGAINST THE DEBTOR MAY, ON ACCOUNT OF SUCH CLAIM, SEEK OR RECEIVE ANY PAYMENT OR OTHER DISTRIBUTION FROM, OR SEEK RECOURSE AGAINST, THE DEBTOR OR THE POST-CONFIRMATION DEBTOR OR THEIR RESPECTIVE SUCCESSORS OR THEIR RESPECTIVE PROPERTY WITH RESPECT TO A CLAIM WHICH AROSE PRIOR TO THE CONFIRMATION DATE, EXCEPT AS EXPRESSLY PROVIDED IN THE PLAN.**

10.04 **Interest Holders of the Debtor**. **AFTER THE CONFIRMATION DATE, NOTWITHSTANDING BANKRUPTCY CODE SECTION 1141(d)(1), THE HOLDERS OF THE INTERESTS IN THE DEBTOR SHALL CONTINUE TO HAVE THE SAME RIGHTS UNDER NON-BANKRUPTCY LAW WITH RESPECT TO THOSE INTERESTS.**

10.05 **Injunction. EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, FROM AND AFTER THE CONFIRMATION DATE, ALL PERSONS ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR PROCEEDING (WHETHER DIRECTLY, INDIRECTLY, DERIVATIVELY OR OTHERWISE) AGAINST THE DEBTOR, THE REORGANIZED DEBTOR, THE DEBTOR'S PROPERTY OR THE ESTATE BASED ON ANY ACT, OMISSION, TRANSACTION, OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED ON OR BEFORE THE CONFIRMATION DATE,**

**NOTHING IN THE PLAN OR THE CONFIRMATION ORDER SHALL ENJOIN THE UNITED STATES GOVERNMENT OR ANY OF ITS AGENCIES OR ANY STATE AND LOCAL AUTHORITY, FROM BRINGING ANY CLAIM, SUIT, ACTION OR OTHER PROCEEDINGS (WHETHER DIRECTLY, INDIRECTLY, DERIVATIVELY OR OTHERWISE) AGAINST THE DEBTOR, OR ANY OF THE DEBTOR'S OFFICERS, DIRECTORS, MEMBERS, EMPLOYEES, ATTORNEYS, ADVISORS, AGENTS, REPRESENTATIVES AND ASSIGNS, OR THE DEBTOR'S PROPERTY, FOR ANY LIABILITY, INCLUDING UNDER THE INTERNAL REVENUE CODE, THE ENVIRONMENTAL LAWS OR ANY CRIMINAL LAWS OF THE UNITED STATES OR ANY STATE OR LOCAL AUTHORITY. IN ADDITION, THE INJUNCTION PROVIDED FOR IN THE PLAN SHALL NOT RELEASE ANY ATTORNEY FROM ANY OBLIGATIONS OWED UNDER RULE 1.8(h) OF THE NEW YORK STATE RULES OF PROFESSIONAL CONDUCT.**

10.06 **Release by the Debtor. PURSUANT TO BANKRUPTCY CODE SECTION 1123(b), AND EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN, UPON THE EFFECTIVE DATE, THE DEBTOR SHALL RELEASE UNCONDITIONALLY, AND HEREBY IS DEEMED TO FOREVER RELEASE UNCONDITIONALLY: (A) THE COMMITTEE, AND SOLELY IN THEIR RESPECTIVE CAPACITIES AS MEMBERS OR REPRESENTATIVES OF THE COMMITTEE, EACH MEMBER OF THE COMMITTEE; (B) WFBC AND ITS OPERATING DIVISION, WELLS FARGO BUSINESS CREDIT; (C) EACH OF THE RESPECTIVE DIRECTORS, OFFICERS, ADVISORS, ACCOUNTANTS, CONSULTANTS, ATTORNEYS AND OTHER REPRESENTATIVES OF EACH OF THE FOREGOING; (D) THE DEBTOR'S ATTORNEYS, FINANCIAL ADVISORS AND ACCOUNTANTS; (E) BOLAN (US), BOLAN (HK), BOLAN (BVI), KAREN WANG AND GUYER McCRACKEN (COLLECTIVELY, THE "**RELEASED PARTIES**"), FROM ANY AND ALL CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, RIGHTS, CAUSES OF ACTION AND LIABILITIES WHATSOEVER (EXCEPT FOR THE RIGHT TO ENFORCE THE PERFORMANCE OF THEIR RESPECTIVE OBLIGATIONS, IF ANY, UNDER THE PLAN), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR**

AROSEN/904167/V5/060000

UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, THEN EXISTING OR THEREAFTER ARISING, IN LAW, OR OTHER OCCURRENCE TAKING PLACE ON OR PRIOR TO THE EFFECTIVE DATE, EXCEPT FOR THOSE CLAIMS OR LIABILITIES ARISING OUT OF OR RELATING TO ANY ACT OR OMISSION THAT CONSTITUTES GROSS NEGLIGENCE, WILLFUL MISCONDUCT, BREACH OF FIDUCIARY DUTY, CRIMINAL CONDUCT, *ULTRA VIRES* ACTIONS, OR THE DISCLOSURE OF CONFIDENTIAL INFORMATION THAT CAUSES DAMAGES.

10.07 **Exculpation.**

TO THE EXTENT PERMISSIBLE UNDER BANKRUPTCY CODE SECTION 1125(e), NEITHER THE DEBTOR NOR THE COMMITTEE SHALL HAVE OR INCUR ANY LIABILITY TO ANY HOLDER OF A CLAIM OR INTEREST FOR ANY ACT OR OMISSION DURING THE PENDENCY OF THE CHAPTER 11 CASE IN CONNECTION WITH, OR ARISING OUT OF, THE CHAPTER 11 CASE, THE PURSUIT OF CONFIRMATION OF THE PLAN, THE CONSUMMATION OF THE PLAN OR THE ADMINISTRATION OF THE PLAN OR THE PROPERTY OR CASH TO BE DISTRIBUTED UNDER THE PLAN; PROVIDED, HOWEVER, THAT THE FOREGOING EXCULPATION SHALL HAVE NO EFFECT ON THE LIABILITY OF AN ENTITY WHICH RESULTS FROM ANY SUCH ACT OR OMISSION THAT IS DETERMINED IN A FINAL ORDER TO HAVE RESULTED FROM GROSS NEGLIGENCE, WILLFUL MISCONDUCT, BREACH OF FIDUCIARY DUTY, CRIMINAL CONDUCT, *ULTRA VIRES* ACTIONS, OR THE DISCLOSURE OF CONFIDENTIAL INFORMATION THAT CAUSES DAMAGES, AND, IN ALL RESPECTS, THE DEBTOR, THE COMMITTEE AND EACH OF THEIR MEMBERS AND OFFICERS SHALL BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES UNDER THE PLAN.

10.08 **Releases by Holders of Claims Against Non-Debtors.** IN CONSIDERATION FOR (i) THE DIP LOAN AND OTHER FINANCIAL ACCOMMODATIONS MADE BY WFBC, (ii) THE BOLAN PLEDGE AND THE BOLAN CONTRIBUTION MADE BY THE BOLAN ENTITIES, AND (iii) THE DISTRIBUTIONS TO BE MADE UNDER THE PLAN , THE DEBTOR BELIEVES IT IS APPROPRIATE THAT THE PLAN PROVIDE RELEASES TO THE RELEASED PARTIES.

ALL HOLDERS OF CLAIMS <u>VOTING IN FAVOR OF THE PLAN AND NOT OPTING-OUT OF PROVIDING THIS RELEASE</u> SHALL BE DEEMED TO HAVE RELEASED AND FOREVER DISCHARGED THE RELEASED PARTIES  FROM ALL DEBTS, DEMANDS, ACTIONS, CAUSES OF ACTION, SUITS, ACCOUNTS, COVENANTS, CONTRACTS, AGREEMENTS, PROMISES, DAMAGES, CLAIMS AND LIABILITIES WHATSOEVER, KNOWN OR ON KNOWN, ARISING FROM A CLAIM OR BASED UPON THE SAME SUBJECT MATTER AS A CLAIM OR INTEREST AND EXISTING ON THE CONFIRMATION DATE BASED ON ANY FACT, TRANSACTION, CAUSE, MATTER OR THING WHICH OCCURRED PRIOR TO THE CONFIRMATION DATE, RELATING TO THE DEBTOR, THE PLAN OR THE CHAPTER 11 CASE, EXCEPT FOR THOSE CLAIMS ASSERTING GROSS NEGLIGENCE, WILLFUL MISCONDUCT, BREACH OF FIDUCIARY DUTY, CRIMINAL CONDUCT, *ULTRA VIRES* ACTIONS, OR THE DISCLOSURE OF CONFIDENTIAL INFORMATION THAT CAUSES DAMAGES.

NOTHING CONTAINED HEREIN OR IN THE PLAN SHALL CONSTITUTE A RELEASE OF AN INDEPENDENT CLAIM HELD BY A CREDITOR OR INTEREST HOLDER AGAINST A NON-DEBTOR ENTITY OR PERSON BASED ON ACTS OR OMISSIONS UNRELATED TO THE DEBTOR OR THE CHAPTER 11 CASE.  IN ADDITION, NOTHING CONTAINED HEREIN OR IN THE PLAN SHALL RELEASE ANY ATTORNEY FROM ANY

OBLIGATIONS OWED UNDER RULE 1.8(h) OF THE NEW YORK STATE RULES OF PROFESSIONAL CONDUCT.

ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES CONTAINED HEREIN AND IN THE PLAN.

THE RELEASES PROVIDED FOR IN THIS SECTION IN FAVOR OF THE RELEASED PARTIES SHALL NOT BE BINDING UPON: (A) ANY HOLDER OF A CLAIM THAT VOTED IN OPPOSITION TO THE PLAN; OR (B) ANY HOLDER OF A CLAIM THAT VOTED IN FAVOR OF THE PLAN BUT INDICATED ON THEIR BALLOT THAT THEY WERE OPTING-OUT OF GRANTING THE RELEASES PROVIDED FOR IN THIS SECTION.

THE RELEASES PROVIDED FOR IN THIS SECTION DO NOT RELEASE THE OBLIGATION OF ONE OR MORE OF THE BOLAN ENTITIES TO MAINTAIN THEIR PLEDGE AND GUARANTY IN FAVOR OF WFBC WITH RESPECT TO THE POST-CONFIRMATION CREDIT FACILITY TO BE PROVIDED BY WFBC. IN ADDITION, THE RELEASES PROVIDED FOR IN THIS SECTION DO NOT RELEASE THE DEBTOR UNDER THE CLASS 6 NOTE.

NOTHING IN THE PLAN OR THE CONFIRMATION ORDER SHALL EFFECT A RELEASE OF ANY CLAIM BY THE UNITED STATES GOVERNMENT OR ANY OF ITS AGENCIES OR ANY STATE AND LOCAL AUTHORITY, INCLUDING, WITHOUT LIMITATION, ANY CLAIM ARISING UNDER THE INTERNAL REVENUE CODE, THE ENVIRONMENTAL LAWS OR ANY CRIMINAL LAWS OF THE UNITED STATES OR ANY STATE AND LOCAL AUTHORITY AGAINST: (I) THE DEBTOR; (II) ANY OF THE DEBTOR'S MEMBERS, SHAREHOLDERS, OFFICERS, DIRECTORS, EMPLOYEES, ATTORNEYS, ADVISORS, AGENTS, REPRESENTATIVES AND ASSIGNS; AND (III) THE RELEASED PARTIES. IN ADDITION, SUBJECT TO BANKRUPTCY CODE SECTIONS 524 AND 1141, THE RELEASES DESCRIBED HEREIN SHALL NOT PRECLUDE POLICE, FEDERAL TAX, OR REGULATORY AGENCIES FROM FULFILLING THEIR STATUTORY DUTIES.

THE RELEASES DESCRIBED IN THIS SECTION ARE IN ADDITION TO, AND NOT IN LIEU OF, ANY OTHER RELEASE SEPARATELY GIVEN, CONDITIONALLY OR UNCONDITIONALLY, BY THE DEBTOR TO ANY OTHER PERSON. ANY RELEASE GIVEN BY THE DEBTOR OR A PERSON WHICH IS PART OF OR SUBJECT TO A FINAL ORDER OF THE BANKRUPTCY COURT, INCLUDING, WITHOUT LIMITATION, THE RELEASES AND WAIVERS CONTAINED IN THE DIP ORDER, REMAIN IN FULL FORCE AND EFFECT AND ARE RATIFIED BY THE PLAN.

10.09 Persons or Entities Not Released by the Debtor. Except for the releases contained in the Plan, the Confirmation Order and the DIP Order, the Debtor and the Estate are not releasing any claims or actions against any Person, or their respective affiliates, assigns, agents, directors, officers, advisors, accountants, investment bankers, consultants, attorneys and other representatives of any of the foregoing.

10.10 Good Faith. The entry of the Confirmation Order shall constitute the determination by the Bankruptcy Court that the Released Parties have acted in good faith and in compliance with the applicable provisions of the Bankruptcy Code, pursuant to, among others, Bankruptcy Code sections 1125(e) and 1129(a)(3), with respect to the foregoing.

Miscellaneous Provisions

AROSEN/904167/V5/060000

10.11  Headings.  The headings used in the Plan are inserted for convenience or reference only and are not part of the Plan.

10.12  Notices.  Notices shall be deemed given when received.  All notices, requests or demands described in or required to be made in accordance with the Plan shall be in writing and shall be delivered by overnight mail and email transmission as follows:

(a)  If to the Debtor:

SilvermanAcampora LLP
100 Jericho Quadrangle - Suite 300
Jericho, New York 11753
Attn: Adam L. Rosen
516-479-6300
arosen@silvermanacampora.com

(b)        If to the Committee:

Neiger LLP
317 Madison Avenue
21st Floor
New York, NY 10017
Attn: Edward E. Neiger
212-267-7342
eneiger@neigerllp.com

(c)        If to Wells Fargo Bank, NA:

Riker, Danzig, Scherer, Hyland & Perretti LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962-1981
Attn: Joseph L. Schwartz
973-451-8506
jschwartz@riker.com

10.13   If to a holder of a Claim or Interest, at the address set forth in its proof of Claim or proof of Interest filed with and allowed by the Court, or, if none, at its address set forth in the Schedules prepared and filed by the Debtor with the Bankruptcy Court pursuant to Bankruptcy Rule 1007(b).

10.14   Change of Address.  Any of the parties identified in section 12.02 of the Plan may change the address at which it is to receive notices under the Plan by sending written notice pursuant to the provisions of this Article to counsel to the Debtor and the Distribution Agent.

10.15   Modification of the Plan.  The Debtor reserves the right, in accordance with the Bankruptcy Code, and subject to the Committee's and WFBC's reasonable consent, to amend or modify the Plan prior to the Confirmation Date or as soon as practicable thereafter.  After the Confirmation Date, the Post-Confirmation Debtor may, upon appropriate motion and order of the Court, and after giving notice to counsel to Committee, WFBC and the U.S. Trustee, in accordance with Bankruptcy Code section 1127(b), remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purposes and intent of the Plan.

10.16   Reservation of Rights.   Nothing contained herein shall prohibit the Post-Consummation Trust Administrator from prosecuting or defending any of the rights of the Debtor's Estate, including without limitation, the Avoidance Actions.

10.17   Payment Dates.  If payments or Distributions are due to be made under the Plan on a day other than a Business Day, such payment or Distribution shall instead be made, without interest, on the first (1st) Business Day immediately following the due date.  Payment shall be considered timely upon issuance of the check representing the payment, not the day it is received.

10.18   Severability. Should any provision in the Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of the Plan.

AROSEN/904167/V5/060000

10.19   Successors and Assigns.   The rights and obligations of any entity named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such entity.

10.20   Governing Law.   Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York.

10.21   Section and Article References.   Unless otherwise specified, all references in the Plan to Sections and Articles are to Sections and Articles of the Plan.


Dated: New York, New York                **TEXSTYLE, LLC**
          July 14, 2011


                                         By: /s/ Guyer R. McCracken, CFO
                                             Guyer R. McCracken
                                             Authorized Signatory

AROSEN/904167/V5/060000